■ Charles A. Burkhardt, Respondent, v Frank Cuccuzza et al., Defendants, and Sean Fay, Appellant. — In a negligence action to recover dam-

ages for personal injuries, defendant Sean Fay appeals from an order of the Supreme Court, Kings County, entered August 21, 1980, which, *inter alia,* granted the plaintiff's motion to strike Fay's affirmative defense of lack of personal jurisdiction and to compel him to verify his answer. Order reversed, on the law, with $50 costs and disbursements, plaintiff's motion denied and affirmative defense reinstated. On May 9, 1977 an accident occurred between a motor vehicle owned by Frank Cuccuzza and operated by Anthony Cuccuzza and an automobile owned by Charles A. Burkhardt, at the intersection of Court Street and Atlantic Avenue in Brooklyn. Sean Fay was in the Burkhardt vehicle. Burkhardt suffered severe facial lacerations and commenced suit against Frank and Anthony Cuccuzza. Plaintiff subsequently sought to add Fay as a defendant in that action, alleging that Fay had been driving his car with Burkhardt's permission and consent. Service was allegedly effectuated pursuant to the "nail and mail" provisions of CPLR 308 (subd 4). In his answer Fay asserted the affirmative defense of lack of personal jurisdiction. Following plaintiff's motion, *inter alia,* to strike this defense, a traverse hearing was ordered. At the hearing it was elicited that the address at which a copy of the summons had been both nailed and mailed was that of a former girlfriend of Fay. Fay's testimony revealed that he had seen this woman for a two and one-half to three-month period which terminated several weeks prior to the attempted service. He slept at her apartment one or two nights per week during this period and kept some night clothes there. Fay did not have his name connected in any manner with her apartment. Fay did not have any residence in his own name. He maintained his domicile at the home of his mother and sister in Brooklyn, where he kept his clothing, received mail and telephone messages (the telephone was in his sister's name), filed his tax returns and slept between two and four nights per week. Fay also occasionally stayed in a room in the back of a friend's office. At the time of the accident Fay had given the police his mother's address and a telephone number. He did not then have a driver's license so this address could not be verified with the Department of Motor Vehicles. It was revealed that Fay had moved to Kentucky after the relationship with his girlfriend had ended. However, he had traveled back and forth between Kentucky and New York on several weekends in the intervening months prior to the traverse hearing. He stayed at his mother's house the first weekend. He had not been back to his former girlfriend's apartment. Fay testified that he never saw the summons in this lawsuit. Although he had spoken to his former girlfriend, she had not forwarded any of Fay's mail. Fay's attorney had eventually received a copy of the summons from plaintiff's attorneys in May, 1980. The process server testified that he had not first tried to check the Brooklyn directory to locate Fay. There was no mention in the record whether he attempted to contact Fay at the (mother's) address listed on the police report, but it appears evident that this was not done. He had received a memo from one of plaintiff's attorneys who instructed him to go to the girlfriend's apartment. (The attorney's knowledge regarding Fay's relationship with the girlfriend and where the woman lived presumably came from plaintiff, who had been an employee of defendant at a bar he had owned.) The process server noted no names on the building and was let onto the premises on his third attempt to gain entry by an unidentified man. After speaking to this man, the process server was directed to a second floor apartment at which no one answered his knocking. He returned later that afternoon, again gained entry into the building, and attached a summons to the door. The next day he mailed a copy of the summons to this same address. At the conclusion of the

hearing Special Term found that Fay's relationship with the woman was more than a passing one, that plaintiff actually knew of this relationship, that Fay kept clothing at and had free access to the woman's premises, and he had permission to stay there for protracted periods of time. It was held that Fay evidently did not stay at one fixed place, getting mail at his mother's address while sleeping both there and elsewhere. Special Term concluded that Fay had resided at his former girlfriend's apartment, holding that the last known residence is the one last known to plaintiff, whether it in fact was the residence at the time of service, that the process server had exercised due diligence, and that service had been made pursuant to statute. We disagree. Although a copy of the summons may be mailed to a defendant's last known residence, the "nailing" must occur at the defendant's actual place of business, dwelling place or usual place of abode *(Feinstein v Bergner,* 48 NY2d 234; CPLR 308, subd 4). A review of those cases involving substituted service leads to the conclusion that something more than a relationship such as the casual one between Fay and his girlfriend was envisioned by the Legislature in determining dwelling place or usual place of abode. These terms have been construed to represent the actual dwelling place or usual place of abode at the time of service *(Smithtown Gen. Hosp. v Quinlivan,* 88 Misc 2d 1031; *Zelnick v Bartlik,* 46 Misc 2d 1043). Even if we were to accept plaintiff's position that at one time Fay resided at his girlfriend's apartment, the record is devoid of any support for the contention that he resided there at the time of the purported service of summons. Furthermore, we note a lack of due diligence on plaintiff's part in not attempting to contact Fay at his mother's address, which had been noted on the police accident report. Fay was not served and therefore the affirmative defense of lack of personal jurisdiction must be reinstated. Mollen, P.J., Margett, O'Connor and Weinstein, JJ., concur.