■ ROBERT OXHANDLER, Appellant, v H. K. CHANDRA SEKHAR, Respondent, et al., Defendant. — Order and judgment, Supreme Court, New York County (Taylor, J.) entered respectively November 9 and December 28, 1981, confirming special referee's report after a traverse hearing that valid service was not effected on the defendant doctor and, accordingly, dismissing the complaint as to him, reversed, on the law and the facts, the motion to confirm is denied, and the complaint is reinstated, without costs. In a medical malpractice action, alleging acts of malpractice occurring between February 27 and March 2, 1978, plaintiff first tolled the Statute of Limitations as to Dr. Sekhar by filing a summons and complaint with the New York County Clerk on July 30, 1980 in accordance with CPLR 203 (subd [b], par 5). Thereafter, according to an affidavit filed by a process server, personal service was effected on the defendant doctor pursuant to CPLR 308 (subd 2) by delivering the summons and complaint "to a person of suitable age and discretion" at the doctor's office, and thereafter mailing a copy of the summons and complaint to the defendant's last known residence. Defendant interposed an answer alleging as affirmative defenses lack of personal jurisdiction and the Statute of Limitations. Plaintiff moved to strike the affirmative defenses and the matter was referred for a traverse hearing before a special referee. After a hearing, in a report that briefly summarized the conflicting testimony, the referee found in general terms "that valid service was not effected on the defendant pursuant to Section 308 (2) CPLR." Special Term granted defendant's motion to confirm the report, and entered an order dismissing the complaint on the ground that the court did not have jurisdiction over the defendant. We disagree, reverse the order and judgment entered below, deny the motion to confirm, and reinstate the

complaint. From the evidence it appears that Dr. Sekhar shared offices on the third floor of University Hospital with some four other doctors. Each doctor at the relevant time employed a secretary. The secretaries occupied separate offices off the reception area, their offices leading separately to those of the doctors. The process server testified that on August 8 he came to the offices that Doctor Sekhar shared with the other doctors, saw what he took to be an office occupied by the defendant's receptionist secretary, a woman in a nurse's uniform who identified herself as Mrs. Mahler, and served her with the summons and complaint. He testified that on August 11, 1980 he mailed a copy of the summons and complaint to the defendant's last known residence. The defendant's secretary testified in substance that on August 6, 1980, a patient handed to her a summons and complaint which the patient said she had observed on the floor of the reception room. The witness denied knowing of a nurse named Mahler and testified that nurses did not work in the offices of the various doctors. The defendant himself testified that he never received in the mail a copy of the summons and complaint. We, of course, acknowledge the experienced referee's superior opportunity to evaluate the credibility of the witnesses who testified before him, and agree that some of the process server's answers invite questions as to his total reliability. As against that, however, there is the clear reality that the process server's version of what occurred seems inherently more probable than the account implicitly accepted by the referee. Moreover, on careful analysis it is apparent that no critical part of the process server's testimony is in fact directly contradicted by any of the evidence presented on behalf of the defendant. Although the conflicting testimony as to the date of the disputed service raises a perplexing question, it seems undisputed from all of the evidence that the process server in fact had gone to University Hospital, had proceeded to the third floor, and had entered the waiting room in which the defendant doctor and four others shared offices. It is not easy to believe that the process server, having gone so far in discharge of his duties, should at that point have decided to place the summons and complaint on the floor of the reception room. Nor indeed is there any direct evidence that he in fact did so. Although we accept that nurses did not regularly work in the doctors' offices, there is nothing in the testimony to exclude the reasonable inference that from time to time nurses would enter one or more of the doctors' offices in connection with hospital business. The process server testified that the nurse he claimed to have served was reluctant to accept the summons and complaint. It is entirely consistent with all of the testimony in the case that he indeed gave the summons and complaint to a nurse whom he reasonably believed to be associated with the doctor's office, that she thereafter was disquieted at becoming involved in a litigation by her acceptance of the process, and that she dropped the papers on the ground. Certainly this possibility, not inconsistent with any testimony heard by the hearing referee, seems distinctly more likely than the conclusion that the process server, having reached the waiting room of the offices shared by five doctors, each employing a separate secretary, somehow chose to throw the papers to the ground and then falsely swear that he effected service. Analogously the doctor's testimony that he had not received in the mail a copy of the summons and complaint does not refute the claim of the process server that he had duly mailed a copy of the process. Under all the circumstances, the evidence seems to us to sustain the conclusion that service was properly effected. Concur — Kupferman, J. P., Sandler, Fein and Milonas, JJ. Markewich, J. concurs in the result only.