**Daniel J. LEAB and Katharine Kyes Leab, Plaintiffs,**

v.

**Clifford STREIT, Defendant.**

**No. 83 Civ. 5232 (SWK).**

United States District Court, S.D. New York.

April 14, 1984.

Parker Chapin Flattau & Klimpl by Stephen F. Harmon, New York City, for plaintiffs.

Martin S. Streit, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

The above-captioned action came before this Court upon defendant's motion for an order vacating the default judgment granted plaintiffs on December 19, 1983, and dismissing the complaint. For the reasons, and on the conditions, stated below, defendant's motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs commenced this action by filing the complaint on July 13, 1983. The action seeks damages arising out of the alleged breach of a contract for the sale to defendant of a building located at 121 East 78th Street, Manhattan, and owned by plaintiffs. Plaintiffs then attempted to serve defendant at his last known address, 800 Fifth Avenue, Manhattan, an apartment apparently leased by defendant's mother or some other family member in which defendant had been permitted to reside. Plaintiffs were unable to serve him there.

Plaintiffs then determined, through the use of a service agency, that defendant was an employee of Mark Evan Products, Inc. ("Mark Evan"). In an effort to verify this information, plaintiffs' attorney telephoned Mark Evan and asked to speak to "Mr. Streit." After being told "[w]e have three Mr. Streits," plaintiffs' attorney specified the defendant, Clifford Streit. The person on the other end of the phone responded, "I will get him." Plaintiffs' attorney hung up at that point, apparently satisfied that Clifford Streit was employed there (Affidavit of Stephen F. Harmon, dated January 31, 1984, ¶ 4).

Thereafter, on October 13, 1983, the summons and complaint were served by leaving the papers with Blanche Brand, the receptionist at Mark Evan, and by mailing copies of same on October 18, 1983, to defendant, at 800 Fifth Avenue, his last known residence, as well as to defendant in care of Carl Streit (the defendant's father), 300 Castle Drive, Englewood, New Jersey, his parents' residence.

Defendant admits that he received actual notice of the action. At the very least, his uncle, Martin S. Streit, an attorney, telephoned him and informed him about the action and the attempted service at Mark Evan. Clifford Streit claims he did not know what to do about the complaint; however, he did not, at that time, ask Martin Streit to represent him. Nor did he ask Martin Streit for advice. Instead, Clifford Streit simply chose to ignore the complaint.

Meanwhile, on October 31, 1983, Martin Streit, claiming to represent Mark Evan, wrote a letter to plaintiffs' attorneys purporting to advise them that service was defective. The letter states, in relevant part, as follows:

Please be advised that I have consulted by Mark Evan ... in which you attempted personal service on Clifford Streit who is not employed there.

Moreover, in violation of Rule 4(d) of Federal Civil Procedure you attempted to serve the receptionist of Mark Evan....

Furthermore, Mr. Clifford Streit is not a resident of the State of New York and presently, I believe is out of the state. I am not authorized to accept defective service on his behalf.

I further state that any action taken by your firm based upon defective service will subject you to sanctions

[sic passim]. Therefore, as early as October 31, 1983, although neither being being asked to nor purporting to represent defendant, Martin Streit was taking extra-judicial steps to protect defendant's interests in proper service. Nonetheless, the defendant neither answered nor took judicial steps—to wit, a timely motion pursuant to Rule 12 of the Federal Rules of Civil Procedure—to assert his claim of defective service.

In accordance with this Court's practice in handling applications for a default judgment, plaintiffs moved, by Order to Show Cause dated November 17, 1983, for a default judgment against defendant, pursuant to Rule 55 of the Federal Rules of Civil Procedure. Service of the Order to Show Cause was, at the direction of this Court, effected in the same manner as the summons and complaint had been—delivery to Mark Evan, copies mailed to defendant's last known residence and to his parents' residence. A hearing was scheduled for December 12, 1983, at 10:00 A.M.

On December 12, 1983, Martin Streit appeared for Mark Evan in opposition to plaintiffs' motion. At the time of his appearance, Mr. Streit hand-served an affida-

vit in opposition to plaintiffs' motion.[1] In light of the appearance at the eleventh hour of opposition to plaintiffs' motion, albeit by Mark Evan, a non-party without standing, the hearing was adjourned until December 19, 1983. Martin Streit was informed, however, at that time that the unorthodox manner in which he was attempting to protect defendant, while not representing him, was unacceptable. The Court agreed to construe opposition papers from defendant as a Rule 12 motion, but requested, and expected, that the *defendant* be the opposing party.

On December 19, 1983, Martin Streit again appeared at the hearing in opposition to the entry of a default judgment against Clifford Streit. Once again, however, Martin Streit purported to represent Mark Evan and not the defendant. Since no one with standing to oppose plaintiffs' application appeared, plaintiffs' motion was granted and the matter referred to Magistrate Tyler, pursuant to Rule 55(b)(2), for the purpose of conducting an inquest and determining plaintiffs' damages.

On January 17, 1984, defendant, finally represented by Martin Streit, brought on the motion currently before the Court by Order to Show Cause. A hearing was held on the instant application on February 2, 1984, at which defendant presented testimony from the following witnesses: Blanche Brand, the receptionist at Mark Evan who received the service; Jay Buchalter, Mark Evan's comptroller; and Clifford Streit.[2] Although testimony was scant on

some matters, and recollections sketchy at best, the credible evidence adduced on defendant's application establishes the following scenario.

Clifford Streit was employed by Mark Evan as a salesperson from mid-1979 through June, 1982. Clifford remained in New York through August, 1982, during which time he negotiated the contract at issue herein. Clifford's down-payment check of $106,000 for the purchase of this property was returned by the bank for insufficient funds, and the transaction fell through.[3] Thereafter, Clifford left the Tri-State area and went to work as a "gopher" for a foreign citizen; Clifford spent most of this time shuttling back and forth between Hong Kong and California. He returned "home" in late summer or early fall 1983.[4] Although he does not now work at Mark Evan, and apparently has not at any time since June, 1982, he visits Mark Evan occasionally to see his father, Carl, and his brother, Michael, who do work there (Indeed, Carl Streit is the President and sole-owner of Mark Evan).

On October 13, 1983, a process server went to Mark Evan to effect service on Clifford Streit. The process server indicated to Blanche Brand that he was delivering something for Clifford Streit; he probably specified that he was delivering a summons and complaint. The process server then left the summons and complaint at Mark Evan for Clifford Streit.[5] As discussed above, Clifford Streit was made aware of this service shortly thereafter

---

1. The Order to Show Cause directed that *defendant's* papers in opposition, if any, were to be served on or before December 7, 1983. None were so served.

2. In addressing this motion, the Court is also taking into consideration the affidavits submitted on December 12, 1983.

3. The merits of plaintiffs' underlying claim are not currently before the Court, and, therefore, little discussion of the facts, and no expression of opinion, relevant thereto is appropriate at this time.

4. Defendant's responses to inquiries about his current residence were furtive at best: Some-

times he lives at 6 Horizon Road (or House), Fort Lee, New Jersey (his grandmother's apartment); other times at 300 Castle Drive, Englewood Cliffs, New Jersey (his parents' home); still other times, ...?

5. Ms. Brand's recollection of the manner in which process was left was particularly sketchy and incredible: the papers, she testified, were either thrown on the floor or tossed onto a counter-top or ledge from which they fell to the floor; in either event, she disregarded them— left them on the floor in the reception area, presumably to be swept away by the cleaning service at night. The fact that these papers reached Martin Streit belies Ms. Brand's disregard.

during a telephone conversation with his uncle, Martin Streit, concerning Martin's representation of Clifford in another matter. Nonetheless, service was ignored, and the procedural history outlined above ensued.

## —DISCUSSION—

■ Defendant now seeks to have the default judgment entered herein vacated, pursuant to Rule 55(c) and 60(b) of the Federal Rules of Civil Procedure, and plaintiffs' complaint dismissed. Rule 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Rule 60(b) provides, in relevant part, as follows:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (4) the judgment is void....

Pursuant to these rules, a motion to vacate is within the trial judge's discretion. *Davis v. Musler*, 713 F.2d 907, 912 (2d Cir.1983); *United States v. Erdoss*, 440 F.2d 1221, 1223 (2d Cir.1971), *cert. denied*, 404 U.S. 849, 92 S.Ct. 83, 30 L.Ed.2d 88 (1972). Motions to vacate default judgments, however, are to be granted liberally, so that a trial on the merits may be had and justice done. *See Davis*, 713 F.2d at 915 ("all doubts should be resolved in favor of those seeking relief"); *Gill v. Stolow*, 240 F.2d 669 (2d Cir.1957).

The criteria that are applicable in deciding whether to vacate a default judgment have recently been recited by this Court, and by the Second Circuit. *Davis*, 713 F.2d at 915; *Roundball Enterprises, Inc. v. Richardson*, 99 F.R.D. 174 (S.D.N.Y.1983). Those criteria are as follows: "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the

level of prejudice that may occur to the nondefaulting party if relief is granted." *Davis*, 713 F.2d at 915; *Roundball*, at 176. *See also, Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981); *Medunic v. Lederer*, 533 F.2d 891 (3d Cir.1976); *Morris v. Charnin*, 85 F.R.D. 689, 690 (S.D.N.Y.1980).

### 1. *Meritorious Defense*

Defendant has, at one time or another, asserted a plethora of defenses—some to the underlying claim at issue, some to the procedural route this action has taken into this Court. I shall discuss the procedural defenses first.[6]

a. Improper venue.

■ Defendant has argued that venue in this Court is improper (Oral Argument, February 2, 1984). The proper venue of this action is governed by 28 U.S.C. § 1391(a) which provides, in relevant part, that "[a] civil action wherein jurisdiction is founded only on diversity of citizenship may ... be brought ... in the judicial district ... in which the claim arose." Since the claim in this action arose out of an alleged contract, negotiated and executed in this district, for sale of a building located at 121 East 78th Street, in this district, venue is clearly proper in this district.

b. Forum non conveniens.

■ Defendant asked this Court to refuse "to exercise jurisdiction based on the doctrine of 'Forum Non Conveniens'" (Affidavit of Martin S. Streit, dated December 9, 1983, ¶ 9). The doctrine of forum non conveniens allows a court, with jurisdiction over the action before it, to determine, in its discretion, not to exercise that jurisdiction because justice is better served by trial elsewhere. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The most common situation calling for the application of this doctrine involves a claim arising out of some occurrence or

---

**6.** Although it is somewhat unorthodox to discuss all arguments raised when one is sufficient to reach the necessary outcome, in this case I shall discuss in some detail each argument made in the hope that the several specious arguments raised now will not again be proffered.

transaction taking place in some distant district, involving parties, witnesses, and evidence located in that district, with trial in the chosen forum a great inconvenience. This certainly is not such a case. In any event, defendant has not even begun to make a showing that this case calls for such action. *See Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. at 843 (listing relevant factors).

c.  Subject matter jurisdiction.

■  Defendant also argues that "there is no diversity of citizenship to warrant jurisdiction in" this Court (Affidavit of Martin S. Streit dated February 1, 1984, ¶ 10). The Court is at a total loss to understand this argument. The court has subject matter jurisdiction over disputes "between ... citizens of different states" involving in excess of $10,000. 28 U.S.C. § 1332. Section 1332 requires merely that all plaintiffs be citizens of states different from those of all defendants. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). It is not required that any party be a citizen of the forum state. Indeed that restriction was removed from the predecessor to § 1332 in 1875. Act of March 3, 1875, § 1, 18 Stat. 470. Since it is uncontroverted that plaintiffs are citizens of Connecticut and the defendant (to the extent that he has admitted any state citizenship) is a citizen of New Jersey, it is patent that diversity of citizenship does exist, and defendant's argument to the contrary is preposterous.

d.  In personam jurisdiction

■  Defendant argues that this Court lacks in personam jurisdiction over him. There are two parts to the question whether this Court has in personam jurisdiction over the defendant. First, we must determine whether the defendant is amenable to suit in this Court, i.e., whether he can be sued here. Secondly, we must determine whether jurisdiction over the defendant was obtained, i.e., whether he was properly brought before this Court.

i.  amenability to suit in the Southern District of New York

Defendant urges this Court to find that he is not amenable to suit here. Once again, there are two parts to this question. First, we must determine whether the applicable rules of law, either statutory or common law, provide for the exercise of jurisdiction here, i.e., whether the appropriate lawmakers have chosen to grant this Court the power to exercise jurisdiction over this defendant based on some relationship he has with the forum. Secondly, if the power to exercise jurisdiction here has been granted, we must determine whether the grant of that power comports with constitutional limits imposed by the federal constitution upon the exercise of jurisdiction over an individual. Those two concepts—the power that has been granted and the maximum power exercisable within constitutional limitations—are often referred to as "jurisdiction." To refer to both as "jurisdiction," however, confuses the issues to be determined. As Justice Frankfurter once said, "I do not use the term 'jurisdiction' because it is a verbal coat of too many colors." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 39, 73 S.Ct. 67, 70, 97 L.Ed. 54 (1952) (dissenting opinion). To clarify the issues, and for ease of comprehension, therefore, I will refer to the granted power as "competence" and the constitutionally delimited power as "jurisdiction."

Defendant, relying on *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877), has argued that this Court does not have the competence to exercise power over him, because he is not a resident of New York and was not present and served personally within the State. Defendant's reliance on *Pennoyer* is misplaced. To be sure, in 1877 presence within the state was required before a Court was competent (or for that matter, had jurisdiction) to exercise power over an individual. Thankfully, however, the law is not the same today as it was in 1877. Presence within a state, even temporary or transitory presence, is still a common law basis instilling compe-

tence in the courts of that state to adjudicate claims against a person. *See, e.g., Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) ("Personal service of written notice within the jurisdiction is the classic form of notice *always* adequate in any type of proceeding") (emphasis added); *see also, Grace v. Mac Arthur*, 170 F.Supp. 442 (E.D.Ark.1959) (defendant served on airplane while in airspace over state). Presence within a state, however, is no longer the only basis upon which courts are granted competence over defendants. Even defendant acknowledges this when he accepts the argument that residency within the state is ·a sufficient basis granting competence to the court. *See Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940) (domicile sufficient irrespective of presence).

■ Nonetheless, defendant would have this Court find that a nonresident defendant, not present within the state, is *per se* beyond the reach of the court. This argument misses the mark. It is beyond peradventure that courts can, and routinely do, exercise power over nonresident defendants served out of state. *See e.g., Hess v. Pawloski*, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927) (nonresident motorist committing tort within state); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (foreign corporation doing business within state). The exercise of this power, however, is proper only if the appropriate lawmakers have statutorily granted the court the competence to do so.[7] The lawmakers are not required to grant the courts competence over nonresident defendants. *See, Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Pulson v. American Rolling Mill Co.*, 170 F.2d 193 (1st Cir.1948). Indeed, New York, along with other states, has chosen not to extend the competence of its courts to the fullest extent permissible under the Constitution. *See, Liquid Carriers Corp. v. American Marine Corp.*, 375 F.2d 951, 955 (2d Cir.1967); N.Y.Civ.Prac.Law § 302 (McKinney's 1972) (granting competence over non-domiciliaries committing certain acts).

■ The question remains, therefore, whether competence has been provided this Court in this case. Defendant apparently argues that the Court's competence, and that of all federal district courts, is delimited by Rule 4(d)(1) of the Federal Rules of Civil Procedure, effectively limiting competence to those either present or domiciled within the state (Affidavit of Martin S. Streit dated February 1, 1984, ¶ 10 (arguing state long-arm statutes applicable only in state courts)). This argument again misses the mark. Rule 4 deals with the *manner* of service upon a defendant, not with the *amenability* of that defendant to service. *See, Arrowsmith v. United Press International*, 320 F.2d 219, 224 (2d Cir. 1963) (*en banc*) (Friendly J.).[8] Neither Congress nor the federal rulemakers have pronounced the competence of the federal courts sitting in diversity cases. *Id.* at 227. Certainly, Congress has the authority to do so. *Id.* at 226. Congress has pronounced and *expanded* the competence of federal courts for cases arising under certain federal statutes—e.g., the antitrust laws, 15 U.S.C. § 22 (§ 12 of the Clayton Act), and the securities laws, 15 U.S.C. §§ 77v, 78aa (§ 22 of the 1934 Act). Nonetheless, Congress has not done so for diversity cases, and the rules applicable to federal question cases are inapposite. *Arrowsmith*, 320 F.2d at 227. Accepting defendant's suggestion that federal law as defined in Rule 4(d)(1) governs here, and not the state long-arm statutes, would have the anomalous result of vesting the federal courts with *narrower* competence than the state

---

**7.** Of course, the grant of competence must also be within the constitutional limitations. See discussion of jurisdiction, *infra* at pp. 12–13.

**8.** Defendant seems to have overlooked the fact that even Rule 4 expressly provides for service out of state in accordance with state methods of service. *See* Rule 4(c)(2)(C)(i), (e); *see also Giffin v. Ensign*, 234 F.2d 307 (3d Cir.1956) (Rule 4(d)(7) (now 4(c)(2)(C)(i)) allows state method of service out of state).

courts. That simply is not the law: in the absence of action by the federal lawmakers displacing state statutes granting competence over nonresident defendants, those statutes govern the competence of federal courts sitting in diversity cases. *E.g., Intermeat, Inc. v. American Poultry Inc.,* 575 F.2d 1017, 1020 (2d Cir.1978); *Arrowsmith,* 320 F.2d 219.

■ Plaintiff argues persuasively that this Court has competence over defendant pursuant to Section 302 of the New York Civil Practice Law and Rules ("CPLR"). Section 302(a) provides, in relevant part as follows:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary ... who

...

1. transacts any business within the state. ...

This Court finds that defendant transacted business within the state when, as a resident of New York, he negotiated and apparently executed, in New York, the contract for the sale of real property located in New York that is the subject matter of this lawsuit. *See Laupot v. O'Neill,* 49 Misc.2d 508, 267 N.Y.S.2d 878 (Civ.Ct.N.Y.Co.1965), *aff'd,* 49 Misc.2d 1043, 269 N.Y.S.2d 158 (1st Dep't 1966). Thus, this Court has in personam competence over Clifford Streit.

Having determined that this Court has been granted in personam competence over defendant, it must be determined whether the exercise of that competence is constitutional. The Court finds that the exercise of in personam competence over the defendant here comports with the jurisdictional limits imposed on the exercise of power over a defendant by the Due Process Clause of the federal constitution. In order for a forum to constitutionally exercise power over the person of a defendant, the defendant must have "certain minimum contacts [with the forum state] such that

the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.,* 326 U.S. at 316, 66 S.Ct. at 158 (*quoting Milliken v. Meyer,* 311 U.S. at 463, 61 S.Ct. at 343).

■ There is no firm rule, or quantum of contacts, that defines "minimum contacts." Each case must be analyzed independently. In judging minimum contacts, the court focuses on the "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). *See also Calder v. Jones,* —— U.S. ——, ——, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984); *Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980). The Court has no difficulty in this case finding that defendant had sufficient contacts with New York in connection with the contract giving rise to this suit such that the exercise of competence over him is fair and does not offend any notions of justice or fair play. Defendant, at all times relevant to the underlying claim, lived and worked in New York. He negotiated, and apparently executed, the contract at issue in New York. *See Northland Paper Co. v. Mohawk Tablet Co.,* 271 F.Supp. 763 (S.D.N.Y.1967); *Carrolton Assocs. v. Abrams,* 57 Misc.2d 617, 293 N.Y. S.2d 159 (Sup.Ct.N.Y.Co.1968). Most significantly, the contract at issue involved the sale of real property located immutably within this state. *Cf. Tebedo v. Nye,* 45 Misc.2d 222, 256 N.Y.S.2d 235 (Sup.Ct. Onondaga Co. 1965) (action related to nonresident defendant's relationship to real property in state at time action accrued); CPLR § 302(a)(4) (competence over nonresident for action arising out of ownership of real property in state). These contacts make it both foreseeable[9] and eminently reasonable that defendant should be haled into the courts in New York. *See McGee v.*

---

**9.** Although the foreseeability of occurrences within the forum state alone does not constitutionally justify haling a nonresident into the forum state's courts, the foreseeability of a suit in the forum state is a relevant factor in deter-

mining the fairness and constitutionality of exercising power over a defendant. *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

*International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (action against defendant related to mailing of single insurance contract into state constitutional because defendant "transacted" business within state); *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970) (action against defendant related to contract to purchase artwork negotiated and executed by bidding via telephone from California to auction conducted in New York constitutional as "transacting" business within state). The fact that plaintiffs are not New York residents, while not irrelevant, does not defeat jurisdiction based on defendant's contacts. *Keeton v. Hustler Magazine, Inc.,* —— U.S. ——, ——, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984).

Thus, it is quite clear that Clifford Streit is amenable to suit in this Court. New York has provided this Court with the competence to adjudicate plaintiffs' rights against the person of Clifford Streit, and the exercise of that power is consonant with the due process limitations on in personam jurisdiction.

### ii. obtaining in personam jurisdiction

■■■ Having determined that Clifford Streit is amenable to suit in this Court, it remains to be seen whether, in fact, the court has obtained in personam jurisdiction [10] over him in this action. As the Supreme Court stated, "service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444–45, 66 S.Ct. 242, 246, 90 L.Ed. 185 (1946). Indeed, "a court can acquire such jurisdiction over a defendant in only two ways, viz., his voluntary appearance in the action or service of the court's process upon him in strict conformance with a valid

statute authorizing it." *Veeck v. Commodity Enters. Inc.,* 487 F.2d 423 (9th Cir.1973).

Clifford Streit has not voluntarily appeared in this action. Quite the contrary, he has done everything he could to avoid appearing.

■■■ It remains to be seen, however, whether defendant was served in strict conformance with any valid statute. Rule 4 of the Federal Rules of Civil Procedure, governing service of process herein, provides, in relevant part, as follows:

(c)(2)(C) A summons and complaint may be served upon [an individual] defendant ... (i) pursuant to the law of the State in which the district court is held for the service of summons or other like process upon such defendant in an action brought in the court of general jurisdiction of that State, or ...

(d)(1) ... by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein....

(e) ... Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons ... upon a party not an inhabitant of or found within the state ... service may ... be made under the circumstances and in the manner prescribed in the statute or rule.

Plaintiffs attempted to effect service in this case by leaving a copy of the summons and complaint with (or near) Blanche Brand, defendant's aunt and Mark Evan's receptionist, at defendant's supposed place of employment, and by mailing copies to defendant's last known address as well as to his parents' residence (where he does apparently stay on occasion).[11]

---

**10.** The distinction between granted and constitutionally delimited power is not relevant for these purposes. Although more accurately stated the Court obtains and exercises competence, the cases use the term "jurisdiction." For these

purposes, therefore, I will avoid confusion with precedent by employing the term "jurisdiction."

**11.** The Court has no doubt that this method is "reasonably calculated, under all the circumstances, to apprise the interested part[y] of the pendency of the action and afford [him] an

■ Defendant was not served personally. Nor was defendant served by leaving copies of the summons and complaint at a location qualifying as "his dwelling house or usual place of abode." Thus, service was not effected pursuant to Rule 4(d)(1). That does not, however, end the inquiry, and defendant's contention that it does is to no avail. Rule 4(c)(2)(C)(i) specifically sanctions the use of state methods of service.

Service of process under New York law is governed by CPLR § 308, which provides, in relevant part, as follows:

> Personal service upon a natural person shall be made by any of the following methods:
> 2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by mailing the summons to the person to be served at his last known residence....

Plaintiffs attempted to effect service pursuant to this provision.

Plaintiffs did "deliver" the summons in conformity with § 308. Even if, as Ms. Brand testified somewhat incredibly, the process server threw the summons to the floor near her when she resisted receipt, this still constituted "delivery." *See Bossuk v. Steinberg*, 58 N.Y.2d 916, 460 N.Y. S.2d 509, 447 N.E.2d 56 (1983) (delivery to "general vicinity" of resistor is sufficient).

Moreover, Ms. Brand is "a person of suitable age and discretion." Ms. Brand is a mature woman in full control of her faculties. She is the defendant's aunt. *See Durham Productions, Inc. v. Sterling Film Portfolio, Ltd.*, 537 F.Supp. 1241 (S.D.N.Y.1982) (son); *Dime Savings Bank v. Norris*, 78 A.D.2d 691, 432 N.Y.S.2d 522 (2d Dep't 1980) (husband). She is also the receptionist at defendant's supposed workplace. *See Braun v. St. Vincent's Hospital and Medical Center*, 57 N.Y.2d 909, 456 N.Y.S.2d 763, 442 N.E.2d 1274 (1982) (doorman); *Oxhandler v. Sekhar*, 88 A.D.2d 817, 451 N.Y.S.2d 100 (1st Dep't 1982) (nurse-receptionist); *Levin v. McGovern*, 53 A.D.2d 1042, 386 N.Y.S.2d 168 (4th Dep't 1976) (secretary).

■ The key question, then, is whether Mark Evan was, on October 13, 1983, Clifford Streit's "actual place of business." [12] New York courts, testing the adequacy of service under subsections (2) and (4) of § 308, which provide for delivery or attachment to a specific location, have construed the statute literally. *See Feinstein v. Bergner*, 48 N.Y.2d 234, 422 N.Y.S.2d 356, 397 N.E.2d 1161 (1979) (§ 308(4); parents' residence not "actual dwelling place" of now-married defendant with own residence); *Community State Bank v. Haakonson*, 94 A.D.2d 838, 463 N.Y.S.2d 105 (3d Dep't 1983) (§ 308(4); defendant separated from his wife and moved from the marital abode before service—not "usual place of abode"); *Connell v. Hayden*, 83 A.D.2d 30, 443 N.Y.S.2d 383 (2d Dep't 1981) (§ 308(2); mailing to actual place of business does not satisfy mailing component); *Burkhardt v. Cuccuzza*, 81 A.D.2d 821, 438 N.Y.S.2d 594 (2d Dep't 1981) (§ 308(4); service at apartment defendant had shared with former girlfriend ineffective because neither "actual dwelling place" nor "usual place of abode" once defendant returned to mother's home); *Chalk v. Catholic Medical Center of Brooklyn and Queens, Inc.*, 58 A.D.2d 822, 396 N.Y.S.2d 864 (2d Dep't 1977) (§ 308(2); mailing to actual place of business does not satisfy mailing component); *but see Karlin v. Avis*, 326 F.Supp. 1325 (E.D.N.Y.1971) (construe "dwelling

---

opportunity to present [his] objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Thus, this method comports with constitutional requirements imposed by the Due Process Clause. Nonetheless, it must also conform to some statute authorizing service in this manner. *See Wuchter v. Pizzutti*, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1924) (actual notice

irrelevant if not in conformance with statute that satisfies requirements).

**12.** Although Mark Evan was definitely defendant's "actual place of business" at an earlier time, compliance with the statute is tested at the time of service. *See Burkhardt v. Cuccuzza*, 81 A.D.2d 821, 823, 438 N.Y.S.2d 594, 596 (1st Dep't 1981).

place" broadly to include apartment leased by corporation and used by defendant when in town). Service in this case is good, then, only if Clifford Streit actually worked at Mark Evan on October 13, 1983, and not if he had theretofore or subsequently worked there, or visited there.[13]

Plaintiffs submitted evidence to this Court that, standing alone, is sufficient to establish a *prima facie* showing that defendant worked there. An independent agency allegedly determined that he worked there. Furthermore, plaintiffs' counsel seemingly verified the information with his phone call to Mark Evan. Defendant has, however, submitted substantial evidence to the contrary. Three witnesses testified that Clifford Streit ceased to be employed at Mark Evan in June, 1982, and has not returned to work there. Their testimony was credible.[14] Moreover, Mark Evan's employee payroll card for Clifford Streit was admitted into evidence corroborating this testimony.

■■■■■ The burden of proving that defendant worked at Mark Evan rests on plaintiffs, since they are trying to establish the existence of in personam jurisdiction. *See DiCesare-Engler Productions, Inc. v. Mainman Ltd.*, 81 F.R.D. 703, 705 (W.D. Pa.1979). Since defendant has submitted credible evidence substantiating his argument that he did not work there, I find that plaintiffs have not met their burden. A plausible explanation exists for counsel's phone conversation—to wit, defendant may have been at Mark Evan at that time on one of his occasional visits. *See Oxhandler*, 451 N.Y.S.2d at 102 (construing facts so as to avoid direct conflict or rejection of any testimony). Thus, service on defendant was technically defective.

■■■■■ Defendant did not waive his objection when he failed to come forward within twenty days of this technically defective service. *See United States v. Mar-*

ple Community Record, Inc., 335 F.Supp. 95 (E.D.Pa.1971); *Ruddies v. Auburn Spark Plug Co.*, 261 F.Supp. 648 (S.D.N.Y. 1966); *Kadet-Kruger & Co. v. Celanese Corp.*, 216 F.Supp. 249 (N.D.Ill.1963); *Berlanti Constr. Co., Inc. v. Republic of Cuba*, 190 F.Supp. 126 (S.D.N.Y.1960); *Seman v. Pittsburgh Brewing Co.*, 25 F.R.D. 209 (N.D.Ohio 1960); *In re Eizen Furs, Inc.*, 10 F.R.D. 137 (E.D.Pa.1950). Although there would not appear to be any constitutional infirmity in holding that he did waive his objection in this case, since actual notice was received (*see* 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1391, p. 272, 1982 Pocket Part), the better approach seems to be to start the twenty day period for waiver running when in personam jurisdiction is obtained by valid service.

This is particularly true because the receipt of actual notice does not remedy otherwise defective service. *See Wuchter v. Pizzutti*, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1924) (statute unconstitutionally failed to require service; actual notice did not establish in personam jurisdiction); *Ruddies v. Auburn Spark Plug Co.*, 261 F.Supp. 648 (S.D.N.Y.1966); *see also Veeck v. Commodity Enterprises, Inc.*, 487 F.2d 423 (9th Cir.1973). Thus, the technically defective service in this case did not obtain for this Court in personam jurisdiction over Clifford Streit.

■■■■■ A judgment rendered without in personam jurisdiction is void. *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877); *Ruddies*, 261 F.Supp. at 657; *see also United States v. Milana*, 148 F.Supp. 152, 154 (E.D.Mich.1957) ("a judgment rendered without valid personal or substituted service on the defendant is void"). The Court has no choice but to vacate a void judgment pursuant to Rule 60(b)(4). *See Milana*, 148

---

**13.** While the Court does not believe that so literal an interpretation of the statute furthers the purpose of the statute, especially where service satisfies constitutional requirements (see

note 11, *supra*), the Court feels constrained to follow the state court interpretations.

**14.** At least on this point.

F.Supp. at 154 (no discretion); *see also Haakonson,* 463 N.Y.S.2d at 106.[15]

e. Defenses to underlying claim.

■ Plaintiffs argue quite forcefully that defendant does not have a meritorious defense to the underlying action. Admittedly, defendant has not persuasively demonstrated the existence of any defenses to plaintiffs' contract claim.[16] Defendant, however, need not present a meritorious defense to the underlying claim if the judgment being vacated is void. *See New York State Health Facilities Ass'n, Inc. v. Carey,* 76 F.R.D. 128, 132 (S.D.N.Y.1977) (void for want of subject matter jurisdiction). A jurisdictional defect is a sufficient meritorious defense. *See Trachtman v. T.M.S. Realty,* 393 F.Supp. 1342, 1346 (E.D.Pa. 1975) (but found no jurisdictional defect).

Thus, defendant has demonstrated a meritorious defense—to wit, want of personal jurisdiction—warranting an order vacating the default judgment entered in this action.

### 2. *Willfulness of Default*

Defendant received actual notice of the instant action but chose to ignore plaintiffs' suit. He allegedly did not seek legal advice, even though his uncle, an attorney, was representing him in another matter. Indeed, his uncle was the source of defendant's actual knowledge of this suit. Furthermore, rather than encourage his nephew, and client, to appropriately address the defective service in this case, Martin Streit threatened plaintiffs with sanctions should they attempt to proceed with an action they believed, in good faith, had been properly commenced. Finally, in spite of the fact that the case was being monitored by Martin Streit, and that defendant was aware that plaintiffs were pressing for a default judgment, defendant chose not to come forward with objections until the default judgment was actually entered.

In sum, defendant knowingly and willfully ignored the (albeit technically defective) service in this case. *Compare Brand v. NCC Corp.,* 540 F.Supp. 562 (E.D.Pa.1982) (client directed attorney not to answer but to attempt to settle); *Chandler Leasing Corp. v. UCC, Inc.,* 91 F.R.D. 81 (N.D.Ill. 1981) (client claimed summons lost in mail to attorney; testimony that attorney directed not to answer); *Morrisey v. Crabtree,* 143 F.Supp. 105 (M.D.N.C.1956) (defendant refused to accept mail service). Even though service was defective, defendant had a duty to defend this action and attack service. *See Karlsson v. Rabinowitz,* 318 F.2d 666, 668 (4th Cir.1963) ("where actual notice of the commencement of the action and the duty to defend has been received"); *but see Ruddies,* 261 F.Supp. at 657 ("If service was invalid ... [defendant] was 'entitled to ignore the whole proceeding and subsequently attack any default judgment which might result from it.' ") (*quoting Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 873 (3d Cir.), *cert. denied sub nom., Orange Theatre Corp. v. Brandt,* 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573 (1944)). The defendant is "entitled to ignore" service in the sense that no valid judgment will ensue his default; however, judicial economy is not served by giving a defendant *carte blanche* to ignore service that is actually received and which can properly be attacked within the channels prescribed by the Federal Rules of Civil Procedure. Rule 12(b)(5) would be a hollow rule, indeed, if it were not anticipated that insufficient service would be attacked by motion pursuant thereto. Moreover, defendant, himself, chose to act in this manner. This is not a case where "an attorney's inexcusable neglect ... ought not prejudice the client."

---

**15.** Defendant's separate argument that service was ineffective is subsumed in the finding that in personam jurisdiction was not obtained in this case.

**16.** Defendant has raised the spectre of three putative defenses: a) want of consideration because the down-payment check bounced; b) incapacity at the time of contract by reason of mental illness; and c) exaggerated damages owing to a friendly sale by plaintiff to the subsequent purchaser. The Court will not comment, at this time, on the validity of any of these suggested defenses.

*Brand,* 540 F.Supp. at 564. Thus, defendant knowingly, and willfully, ignored the service in this case, in the face of his duty to defend by making a Rule 12(b)(2) or (5) motion to dismiss, and has caused this Court, and plaintiffs, to expend excess time and resources.

### 3. *Prejudice to Plaintiffs*

■ Plaintiffs will not be prejudiced in any way which calls for denying defendant's motion to vacate. Plaintiffs may be delayed somewhat in receiving the moneys allegedly owed them,[17] but that is not the kind of prejudice required to avoid vacatur. *See Roundball,* at 177. The only real prejudice plaintiffs suffer herein is the cost of pressing for the default judgment which could have been avoided had defendant timely moved for dismissal. *See Thorpe v. Thorpe,* 364 F.2d 692, 694 (D.C.Cir.1966).

### *Relief*

■ In sum, in spite of defendant's willful failure to defend this action, the default judgment will be vacated, pursuant to Rule 60(b)(4), since the judgment is void for want of in personam jurisdiction.[18] The Court, however, has the power to grant defendant relief "upon such terms as are just." Fed.R.Civ.P. 60(b); *see also Roundball,* at 177.

Since defendant's willful conduct forced the plaintiffs to seek a default judgment, and plaintiffs were thereby prejudiced to the extent that the costs of seeking the default judgment could have, and should have, been avoided, the Court believes it is appropriate that defendant bear the costs incurred by plaintiffs in obtaining the default judgment—to wit, the cost of preparing the Order to Show Cause dated November 17, 1983, and of appearing at the scheduled hearings on December 12th and 19th. *See Roundball,* at 177; *Hensey Properties, Inc. v. Lamagna,* 23 A.D.2d 742, 258 N.Y.S.2d 495 (1st Dep't 1965); *Solomon v.*

*Terlizzi,* 15 A.D.2d 802, 224 N.Y.S.2d 702 (2d Dep't 1962); *cf. Thorpe,* 364 F.2d at 694 ("the condition most commonly imposed is that the defendant reimburse the plaintiff for costs—typically court costs and attorneys fees—incurred because of the default"). Plaintiffs are to submit to this Court for consideration and approval a statement detailing the costs incurred as outlined above.

■ Defendant has also moved for dismissal, pursuant to Fed.R.Civ.P. 12(b)(2) and (5). The Court will not dismiss this action. *See Haley v. Simmons,* 529 F.2d 78, 79 (8th Cir.1976) (dismissal is not required; court can quash service and "allow[ ] further attempts to serve process"); *Davis v. Gahan,* 227 F.Supp. 867 (S.D.N.Y. 1964). This is especially appropriate in this case because "it does not appear that [defendant] is not susceptible to proper service by compliance with the New York statute." *Davis v. Gahan,* 227 F.Supp. at 872. Defendant is amenable to suit in this District (See discussion at section 1(d)(i) above). Plaintiffs' attempted service is, therefore, quashed, but the complaint is not dismissed.

■ Plaintiffs must now effect valid service upon defendant. If plaintiffs choose to serve defendant using New York methods of service, they may serve him in state or out of state as long as he is served in strict compliance with one of the subsections contained in CPLR § 308. Fed.R.Civ.P. 4(e) (out of state service by state method permitted); CPLR § 313 (service out of state permitted as provided by § 308). Plaintiffs attempted service in accordance with § 308(2). That subsection, as well as subsection four, is geared for situations where either the defendant's actual dwelling place or his actual place of business is known along with some last known residence. *See Feinstein v. Bergner,* 48 N.Y.2d 234, 241, n. 5, 422 N.Y.S.2d

---

17. This assumes that plaintiffs will ultimately prevail on the merits—an assumption this Court expresses no opinion on at this time.

18. Implicit in the discussion of vacatur of the default judgment entered herein is the vacatur of the default entered by the Clerk of the Court as well.

356, 359 n. 5, 397 N.E.2d 1161, 1164 n. 5 (1979). That, as it turns out, was not the situation for plaintiffs at the time service was attempted. Likewise, given defendant's tergiversations concerning his current residence, it is not the case today (see footnote 4, above). Since the proper "actual" locations to serve defendant are unknown, some substitute manner of service is called for in this case. *Id.* CPLR Section 308(5) enables this Court to direct that service be made in a substitute manner. Plaintiffs are hereby instructed that, if they choose to attempt service under New York methods, pursuant to CPLR § 308(5) service may be effected by delivering a copy of the summons and complaint to defendant's attorney, Martin Streit, at 1501 Broadway, Manhattan, in conjunction with the mailing of copies of the summons and complaint to defendant at 300 Castle Drive, Englewood, New Jersey (his parents' home), and 6 Horizon House, Fort Lee, New Jersey (his grandmother's home). *See Deason v. Deason,* 73 Misc.2d 964, 343 N.Y.S.2d 276 (Sup.Ct. Albany Co.1973) (mailing service to the addresses of defendant's relatives, pursuant to a § 308(5) order, effective and constitutional).

### —CONCLUSION—

In sum, defendant's motion to vacate the default judgment entered in this case on December 19, 1983, and the default certified on January 4, 1984, is hereby GRANTED; however, defendant shall bear the costs incurred by plaintiffs because of the default and plaintiffs shall submit a statement of those costs for approval; service attempted on defendant at Mark Evan is hereby QUASHED; defendant's motion to dismiss the action is DENIED, and the case will remain on this Court's active docket; and, plaintiffs are to attempt to effect service, and may do so in the substitute manner detailed above.

SO ORDERED.