**INTERFIRST BANK CLIFTON,**
**Plaintiff–Appellee,**

**v.**

**Julian E. FERNANDEZ,**
**Defendant–Appellant.**

**No. 87–1321.**

United States Court of Appeals,
Fifth Circuit.

May 11, 1988.

Steve Moody, Naman, Howell, Smith & Lee, P.C., Waco, Tex., Rudy J. Cerone, B. Franklin Martin, III, New Orleans, La., for defendant-appellant.

George Philip Robertson, Steve Robertson, Clifton, Tex., for plaintiff-appellee.

Before RUBIN, WILLIAMS and DAVIS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This appeal arises from a deficiency judgment rendered in federal district court in Texas, against appellant Julian E. Fernandez, a Louisiana resident, who claims his contacts with the State of Texas are insufficient to support personal jurisdiction. Fernandez also claims that the district court erred in applying the Texas law of deficiency judgments instead of the Louisiana law. Finally, he claims that even under Texas law, the deficiency judgment was erroneous because it was based upon an unreasonable commercial sale under Tex.Bus. & Com.Code Ann. § 9.504(c) (Ver-

non Supp.1988). We affirm the decision of the district court, finding that it properly exercised personal jurisdiction, and correctly chose and applied Texas law.

## I. *Facts*

Fernandez is a Louisiana businessman and owner of several aircraft. In July of 1981 he observed an ad in the *Wall Street Journal* offering for sale a Schafer Piper Comanchero airplane. He responded to the ad by calling from Louisiana to Texas to speak with Shelby L. Richardson, a vice president at Clifton Bank, predecessor in interest of Interfirst Bank Clifton ("Interfirst"). Richardson and a representative of the manufacturer of the airplane thereafter flew to Patterson, Louisiana, to take Fernandez on a test flight. Some time later, Fernandez again called Richardson in Texas and offered to purchase the plane for $610,000. The bank accepted the offer and agreed to finance the sale. Fernandez signed sale and loan documents including a Loan Commitment Agreement, a $550,000 Promissory Note, and a Security Agreement, all dated July 27, 1981. Fernandez later signed a Louisiana security instrument entitled Collateral Chattel Mortgage, in Amelia, Louisiana. The mortgage was recorded in the clerk's office of the Parish of St. Mary, Louisiana, on September 21, 1981.

Fernandez became unable to make his payments on the note. He delivered the airplane to a broker in Pennsylvania to attempt its sale. After several months in which the broker was unable to sell the plane, Interfirst contacted Fernandez and informed him of an interested buyer in Texas. Based on this representation, Fernandez agreed to let Interfirst's pilot fly the plane back to Texas in early April of 1983. In this manner, Interfirst effectively repossessed the plane.

In September 1983, with the plane back in Texas, Interfirst accelerated the note and made demand for full payment. Fernandez then received and signed a letter from Interfirst in which he consented to Texas foreclosure procedures and waived his rights under Louisiana law. Approxi-

mately two years later, on December 20, 1985, Interfirst sold the plane in a private foreclosure sale for less than half the price at which it was sold to Fernandez in 1981. Interfirst then filed suit in state district court in Bosque County, Texas to recover the deficiency between the balance due on the note and the selling price of the plane. This being a diversity case, Fernandez removed to the United States District Court, Western District of Texas, Waco Division pursuant to 28 U.S.C. §§ 1441 and 1332. Fernandez then filed a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction. The motion was denied, and the case proceeded to a bench trial in which Interfirst was awarded $447,921.29 in deficiency on the note, plus interest and reasonable attorney's fees. Fernandez filed this appeal.

## II. *Personal Jurisdiction*

■ A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant, provided state law confers such jurisdiction and its exercise comports with due process under the Constitution. *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 489 (5th Cir.1974). Because the Texas long-arm statute extends to the limits of due process, *Hall v. Helicopteros Nacionales De Colombia S.A.,* 638 S.W.2d 870, 872 (Tex.1982), *rev'd on other grounds,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), we consider only whether jurisdiction over Fernandez satisfies federal constitutional requirements.

The United States Supreme Court divides this inquiry into two parts: whether the nonresident defendant purposefully established "minimum contacts" with the forum state and, if so, whether the exercise of jurisdiction results in "fair play and substantial justice." *Asahi Metal Industry Co. v. Superior Court of California,* —— U.S. ——, ——, 107 S.Ct. 1026, 1029, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). We consider these due process considerations in turn.

## A. *Minimum Contacts*

■ The minimum contacts of a nonresident defendant may support either "specific" or "general" jurisdiction. Specific jurisdiction refers to a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros, supra,* 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8, 80 L.Ed.2d at 411 n. 8. General jurisdiction refers to a suit which does not arise from the nonresident's contacts with the forum, and is asserted only over defendants who maintain "continuous and systematic" contacts in a particular forum. *Id.* 466 U.S. at 415, 104 S.Ct. at 1873. The theory of general jurisdiction clearly is not applicable in this case.[1] This deficiency action is directly related to Fernandez's airplane purchase and financial arrangements with Interfirst, a Texas bank. Thus, we examine these contacts to determine whether they support a finding of specific jurisdiction.

We are guided by the Supreme Court's discussion of minimum contacts in *Burger King, supra,* 471 U.S. at 473–82, 105 S.Ct. at 2183–87.[2] In *Burger King* the Court found specific jurisdiction based upon relatively few contacts between a nonresident defendant and the forum state of Florida. The defendant, Rudzewicz, was a Burger King franchise owner who lived in Michigan and had dealt almost exclusively with the Michigan Burger King office. Rudzew-

icz had signed a twenty-year Burger King franchise agreement which contained a Florida choice-of-law clause, and which specified that payments would be made to Miami, Florida, the location of the Burger King main office. The Court held that neither the contract nor the choice-of-law clause alone justified exercising jurisdiction over the defendant, but that the combined effect of the two, along with the long-term nature of the business arrangement, evinced "purposeful availment" of Florida laws and provided a reasonable basis on which to anticipate litigation in Florida. *Id.* 471 U.S. at 481–82, 107 S.Ct. at 2187.

■ Fernandez's contacts with Texas are somewhat analogous to those of the franchise owner in *Burger King.* Although the loan agreement between Fernandez and Interfirst is less involved than a twenty-year franchise agreement, it combines with other contacts to show a purposeful application of the laws of Texas. Fernandez called to Texas to purchase the plane. He voluntarily agreed to finance the plane through a Texas bank, and signed a loan agreement containing a Texas choice-of-law clause. He later agreed to return the plane to Texas for sale. And most significantly, he signed a letter consenting to sale under Texas foreclosure procedures and agreeing to liability for any deficiency be-

---

1. Fernandez's contacts with the state of Texas fall short of the Supreme Court's standards for conferring general jurisdiction. In *Helicopteros,* the Supreme Court held that Texas' jurisdiction did not extend over a nonresident corporation. The suit had been filed on behalf of four American citizens killed in a helicopter crash in Peru. The plaintiffs brought suit in Texas state court against the Columbian corporation that owned the helicopter. The corporation's only contacts with the state were as follows: purchasing helicopter equipment in Texas, sending a chief executive officer to Houston for contract negotiation, accepting checks drawn on a Houston bank, and sending personnel to Fort Worth for training. The Supreme Court held that the activities of the Columbian corporation were not sufficiently continuous or systematic to support general jurisdiction. *Id.* 466 U.S. at 415–18, 104 S.Ct. at 1872–74. Likewise, Fernandez's activities in Texas were neither continuous nor systematic, but related only to his airplane purchase with Interfirst.

2. The Supreme Court's plurality portion of the *Asahi* opinion, —— U.S. at ——, 107 S.Ct. at 1031–33, discusses minimum contacts in the context of "stream of commerce," which is not directly related to the contractual situation we face in this case. Asahi, the alien defendant, was a Japanese tire valve manufacturer that had introduced its product into the stream of commerce. The Supreme Court held that the due process clause prevented California from asserting jurisdiction over Asahi. *Id.* —— U.S. at ——, 107 S.Ct. at 1026. The Court stressed the alienage of the parties and the slight interests of California. *Id.* —— U.S. at ——, 107 S.Ct. at 1034–35. We discuss this aspect of the *Asahi* opinion in our consideration of "fair play and substantial justice." For a thorough treatment of *Asahi,* see Maltz, *Unraveling the Conundrum of the Law of Personal Jurisdiction: A Comment on Asahi Metal Industry Co. v. Superior Court of California,* 1987 DUKE L.J. 669 (1987).

tween the sale price and the amount of the note.[3]

 We find that this letter, in addition to Fernandez's other Texas contacts, shows purposeful choice of the laws of Texas and a reasonable basis on which to anticipate suit there. He consented to Texas foreclosure procedures and to liability for any deficiency. It strains logic that a party could consent to deficiency liability under a state's foreclosure procedures without anticipating litigation in the courts that issue and enforce that state's deficiency judgments. Based upon the letter, the voluntarily assumed loan agreement containing a Texas choice-of-law clause, and the presence of the airplane in Texas, we find that Fernandez reasonably could have anticipated litigation in Texas.[4]

B. *"Fair Play and Substantial Justice"*

 The second prong of the due process analysis set out in *Burger King* and *Asahi* requires that once minimum contacts have been found, we consider other factors to determine whether the assertion of jurisdiction comports with "fair play and substantial justice." *Asahi, supra,* —— U.S. at ——, 107 S.Ct. at 1033; *Burger King, supra,* 471 U.S. at 476, 105 S.Ct. at 2184. A nonresident defendant who, like Fernandez, has been found to have purposely directed his activities toward the forum, "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King, supra,* 471 U.S. at 477, 105 S.Ct. at 2185. Such other factors or considerations include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in maintaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several State's in furthering fundamental substantive social policies." *Id.* 471 U.S. at 477, 105 S.Ct. at 2184. In *Burger King,* the Supreme Court applied these guidelines to the facts of the case, noting throughout that many of the concerns could be accommodated either with a change of venue or through application of the forum's choice-of-law rules. *Id.* 471 U.S. at 477–78, 483–84, 105 S.Ct. at 2185, 2188.

 We consider these "other factors" with respect to Fernandez and find that the exercise of jurisdiction over him, based on his contacts with Texas, does not violate the Constitution. Although the burden on Fernandez to defend this action in Texas is perhaps greater than the hypothetical burden on Interfirst of bringing suit in Louisiana, the Supreme Court has stated in

---

3. The letter, written by Interfirst and signed by Fernandez, states in pertinent part:

 *Under Texas procedure* after the aircraft is sold, you will be entitled to receive any funds paid in excess of the debt and cost of sale, and *will be liable for any deficiency.*

 and

 [T]he Bank asks that you *consent to the Texas procedure outlined above and by your signature to this letter waive your rights to judicial seizure and sale under the provisions of Arts. 2332, 2336, 2723, 2724, 2639, 2293, 2721, 2331, and 2722, Louisiana Code of Civil Procedure.* [Emphasis added]

4. Neither the loan agreement nor the choice-of-law clause independently supports Texas' specific jurisdiction over Fernandez. A contract alone does not provide the necessary minimum contacts between a forum and a nonresident defendant. *Burger King, supra,* 471 U.S. at 478, 105 S.Ct. at 2185, (rejecting "mechanical tests" of personal jurisdiction). Similarly, a choice-of-law clause, in and of itself, does not establish consent to litigation in a particular forum—only consent to the application of laws of that forum.

*Burger King, supra,* 471 U.S. at 481–82, 105 S.Ct. at 2187; *Stuart v. Spademan,* 772 F.2d 1185, 1196 (5th Cir.1985). Nor do we decide with this case that the combined effect of a Texas loan agreement and a Texas choice-of-law clause necessarily produces the requisite minimum contacts for specific jurisdiction. Rather, this case turns on the letter in which Fernandez agreed to foreclosure, sale, and deficiency liability under Texas law, involving an airplane at that time located in Texas. Such circumstances distinguish this case from others with similar facts, in which contacts were found insufficient to support personal jurisdiction. *Stuart v. Spademan, supra,* (diversity action for breach of patent agreement against nonresident corporation); *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026 (5th Cir.1983) (buyer's diversity action for breach of contract against nonresident manufacturer of goods); *U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977) (state court action for breach of contract against nonresident defendant).

*Burger King* that an adversary's superior wealth will not defeat jurisdiction. *Id.,* 471 U.S. at 483 n. 25, 105 S.Ct. at 2188 n. 25. Moreover, Fernandez has failed to point to an inability to present evidence which would have been available in Louisiana. The situation is unlike that in *Asahi,* where the defendant, a Japanese corporation, would have had to travel to California and contend with a foreign legal system. *Asahi, supra,* —— U.S. at ——, 107 S.Ct. at 1034. Fernandez was asked only to travel to a neighboring state.

As for the interests of the forum state, Texas has a legitimate concern in carrying out its own laws and protecting its own creditors. In *Asahi,* the plaintiff was not a resident of California, the forum state, and California's interest was practically nonexistent in handling the indemnification issue between Asahi and a Taiwanese corporation. *Id.* —— U.S. at ——, 107 S.Ct. at 1034. Here, however, plaintiff/appellee Interfirst corporation is a Texas resident seeking protection as a creditor under the foreclosure laws of Texas. The forum's interest in this case is considerably greater than that of California in *Asahi.*

Finally, the district court's exercise of jurisdiction in this case is not clearly inconsistent with Louisiana's interests. The choice-of-law issue is separable from the question of jurisdiction. As the *Burger King* Court stated: "minimum-contacts analysis presupposes that two or more states may be interested in the outcome of a dispute, and the process of resolving potentially conflicting 'fundamental substantive social policies,' *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980), can usually be accommodated by choice-of-law rules rather than through outright preclusion of jurisdiction in one forum." *Burger King, supra,* 471 U.S. at 483–84, 105 S.Ct. at 2108 n. 26.

We find that personal jurisdiction was properly exercised in this case, based upon minimum contacts which satisfied Supreme Court standards of fair play and substantial justice. We stress the significance of the letter in which Fernandez agreed to deficiency liability under Texas foreclosure procedures. Here, as in *Burger King,* Fernandez had fair notice of litigation in Texas by virtue of the Texas loan agreement and the letter, both specifying Texas law. A substantial, continuing relationship existed between the parties. Moreover, Fernandez, like the defendant in *Burger King,* failed to show that jurisdiction in Texas was fundamentally unfair. *Burger King, supra,* 471 U.S. at 487, 105 S.Ct. at 2190.

We distinguish this case from *Asahi,* in which the Supreme Court found that the extension of specific personal jurisdiction was unfair, "[c]onsidering the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum state." *Asahi, supra,* —— U.S. at ——, 107 S.Ct. at 1035. None of those considerations were realized in this case. We therefore affirm the district court's choice of forum, and proceed to the appropriate choice of law.

### III. *Choice of Law*

■ A diversity court applies the choice-of-law rules of the state in which it sits. *Stuart v. Spademan, supra,* at 1195. Texas choice-of-law rules recognize valid choice-of-law clauses. *Id.; Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex.1984). The district court thus determined, based on the choice-of-law clause contained in the loan agreement, that Texas law controls this deficiency action.[5]

■ Fernandez attacks the district court's decision on several grounds. First, he claims that because the choice-of-law clause was contained only in the loan agreement and not in the Louisiana security instrument, the clause does not control this action. We agree with the district court, however, that the choice-of-law clause contained in the loan agreement suf-

---

**5.** Tex.Bus. & Com.Code Ann. § 1.105 (Vernon Supp.1988) provides for choice-of-law agreements in commercial transactions: "when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties."

ficiently shows the parties' intention to be bound by Texas law. We need not impose the additional requirement that a Texas choice-of-law clause be included in the Louisiana security agreement as well, particularly when Fernandez also signed a Texas security instrument in conjunction with the note and the loan agreement. Furthermore, the district court's finding that the parties intended Texas law to apply is bolstered by the letter in which Fernandez agreed to Texas foreclosure procedures.

▮▮▮▮▮ Fernandez also claims that the Louisiana Deficiency Judgment Act, La. Rev.Stat.Ann. § 13:4106 *et seq.*, bars Interfirst's recovery of a deficiency judgment. He cites § 4106 which essentially provides that a deficiency judgment must be based on a properly held judicial sale with appraisement.[6] The sale in this case was privately held; hence Fernandez claims the deficiency judgment is barred by Louisiana law. Fernandez further claims that the waiver of his rights under Louisiana law, contained in the aforementioned letter to Interfirst, is invalid under § 4107.[7] We reject these claims on the basis of La.Rev. Stat.Ann. § 13:4108(4), which provides that the Louisiana protections against nonjudicial sale do not apply when the property or

collateral is located outside of Louisiana and the creditor has elected to proceed under the laws of another state.[8] The parties in this case agreed to Texas foreclosure procedures, and the airplane was located in Texas at the time of foreclosure. Thus, by the terms of § 4108, Louisiana law does not bar Interfirst's deficiency judgment. Cases to the contrary cited by appellant, *Universal C.I.T. Credit Corp. v. Hulett,* 151 So.2d 705 (La.App. 3d Cir. 1963); *Murdock Acceptance Corp. v. S. & H. Dist. Co., Inc.,* 331 So.2d 870 (La.App. 2d Cir.1976), are distinguishable from the subject case in that they did not involve a choice-of-law clause such as the one to which Fernandez agreed. It should also be noted that Louisiana is without power to impose its law on foreclosure sales which take place with lawful jurisdiction and choice of law in another state.

▮▮▮ Fernandez raises as his third contention a significant argument that Texas law cannot control this case because the Federal Aviation Act of 1958 (FAA), Section 506, 49 U.S.C. § 1406, contains a federal choice-of-law provision specifying the law of the state where the security instrument was delivered.[9] It is Fernandez's ar-

---

6. La.Rev.Stat.Ann. § 13:4106 states:

*Deficiency judgment prohibited if sale made without appraisement*

If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, and the proceeds of the judicial sale therefore are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his property for such deficiency, ....

7. La.Rev.Stat.Ann. § 13:4107 states:

*R.S. 13:4106 cannot be waived; operation prospective*

R.S. 13:4106 declares a public policy and the provisions thereof can not, and shall not be waived by a debtor, but it shall only apply to mortgages, contracts, debts or other obligations made, or arising on or after August 1, 1934.

8. La.Rev.Stat.Ann. § 13:4108 states in pertinent part:

*Transactions which do not bar deficiency judgment*

Notwithstanding any other law to the contrary, including but not limited to R.S. 13:4106 and 4107 *none of the following actions by a mortgagee or other creditor shall prohibit the mortgagee or other creditor from obtaining a deficiency judgment against any debtor, guarantor, or surety, notwithstanding the fact that a sale of property or collateral may have occurred at a judicial sale without appraisal, at a private sale with or without appraisal, or at a judicial sale with a defective appraisal:*

(4) The mortgagee's or other creditor's exercise of its rights against property subject to a mortgage, pledge, privilege or encumbrance in favor of such creditor, *when the property or collateral is located outside the state of Louisiana, and the creditor has elected to proceed under the laws of the state, county, or territory where the property or collateral is then located to seize for sale such property or collateral.* [Emphasis added]

9. Section 506 of the FAA, 49 U.S.C. § 1406 states:

*Law governing validity of certain instruments*

gument that because a security interest in his plane was delivered and recorded in Louisiana, that state's law governs foreclosure.

Fernandez directs us to the case of *Bank of Lexington v. Jack Adams Aircraft Sales, Inc.*, 570 F.2d 1220 (5th Cir.1978), a diversity action in which this Court held that FAA § 1406 determines which state's law controls the *initial or inherent validity* of an aircraft security instrument. At issue in *Bank of Lexington* was whether an aircraft security instrument required consideration. The panel held that Kentucky law controlled the issue of consideration, because the security instrument had been recorded in that state under the FAA. *Id.* at 1224.

This Court considered the effect upon state law of another provision of the FAA in *Matter of Gary Aircraft Corp.*, 681 F.2d 365 (1982). We recognized that § 503 of the FAA, 49 U.S.C. § 1403, in establishing the recording system preempts state law on filing and recordation of a security interest in aircraft. We held, however, that it does not displace state law assignment of priorities to security interests in aircraft. *Id.* at 368–69. The Supreme Court soon thereafter confined the ruling in *Gary* to state rules governing priority among holders of recorded security instruments only. *Philko Aviation, Inc. v. Shacket*, 462 U.S. 406, 412 n. 6, 103 S.Ct. 2476, 2480 n. 6, 76 L.Ed.2d 678 (1983). That case held that § 503(c) preempts state laws that allow undocument or unreported transfers of interest in aircraft to affect innocent third parties. Although neither *Philko* nor *Gary* directly involved § 506 of the FAA, 49 U.S.C. § 1406, both note that the provision is a federal choice-of-law rule for determining the substantive validity of an instrument. *Philko, supra*, 462 U.S. at 413 n. 7, 103 S.Ct. at 2480 n. 7; *Gary, supra*, 681 F.2d at 371. Appellant suggests that § 506 of

the FAA, 49 U.S.C. § 1406 preempts state choice-of-law rules, even in matters which go beyond the initial validity of the instrument. But, resolution of this assertion is not necessary to the outcome of this case. For whether we apply Texas law or Louisiana law, the outcome is the same.

Although as we point out above the law is by no means certain, even if we assume that beyond the mere question of validity, the entire security instrument is subject to the control of the federal statutory provision, this federal requirement does not empower the state law to forbid waiver of provisions of the security instrument. In this case, Fernandez made completely clear his intent to submit to a Texas foreclosure under the Texas law. This specific waiver of the rights he may have had under Louisiana law is not forbidden under the federal statute. Louisiana itself does not have the power to deprive another state of its lawful jurisdiction over the foreclosure sale by forbidding the waiver of rights under Louisiana law.

Nor does Louisiana undertake to do so. As the analysis set out above reveals, La. Rev.Stat.Ann. § 13:4107, providing that the deficiency judgment requirements under Louisiana law "shall not be waived," lacks extraterritorial effect. *See* fn. 7, *supra.* Instead, La.Rev.Stat.Ann. § 13:4108(4) makes clear the intent of the State of Louisiana not to undertake extraterritorial control. Louisiana has provided that if the property is located outside the state, the foreclosure of such property may take place outside the State of Louisiana at the election of the creditor. *See* fn. 8, *supra.* We find, therefore, that the specific waiver by Fernandez of the application of Louisiana law to the foreclosure of the aircraft was permissible and was effective under both federal and Louisiana law.

*The validity of any instrument the recording of which is provided for by § 1403 of this title shall be governed by the laws of the State, District of Columbia, or territory or possession of the United States in which such instrument is delivered,* irrespective of the location or the place of delivery of the property which is the subject of such instrument. Where the place of intended delivery of such instrument is specified therein, it shall constitute presumptive evidence that such instrument was delivered at the place so specified. [Emphasis added]

## IV. Reasonable Commercial Sale Under Tex.Bus. & Com.Code §§ 9.504(c) and 9.507(b)

Fernandez claims that even under Texas law, Interfirst is barred from recovering a deficiency judgment because it failed to comply with Texas Business & Commerce Code § 9.504(c), which governs the sale of repossessed secured collateral in Texas.[10] Fernandez also claims that Interfirst failed to plead and prove the commercial reasonableness of the sale, and hence failed to state a claim upon which relief could be granted.

■ We briefly dispose of the latter claim as meritless. The allegation that a party has failed to state a claim upon which relief can be granted is one to be made to the district court in compliance with Fed.R. Civ.P. 12(b) & (h)(2). Nevertheless, Fernandez rests his reasoning on *Tackett v. Mid–Continent Refrigerator Co.*, 579 S.W. 2d 545, 549 (Tex.Civ.App.—Fort Worth 1979, ref'd nre), which held, "where there is no proof of a commercially reasonable disposition of the collateral and crediting the debtor with the proceeds, a presumption arises that the proceeds equal the deficiency." In this case there is evidence of both crediting and commercial reasonableness. Appellant's argument simply does not apply. Further, the issue of commercial reasonableness in fact was made part of the pleadings.[11] Although Interfirst had neglected to plead the commercial reasonableness of the sale, the district judge permitted oral amendment of the pleadings at trial and evidence was introduced over Fernandez's objections. The district judge determined that, because Interfirst had included the issue of commercial reasonableness in its trial brief, surprise would not result from the amendment. This decision was well within the district court's discretion, and comports with Fed.R.Civ.P. 15(b). We find that the issue of commercial reasonableness was properly included in the pleadings and proof.

■ Fernandez's other claim under Texas law addresses the merits of the issue. He argues that the airplane sale was commercially unreasonable under § 9.504, because Interfirst's letter of notice went beyond merely giving notice. The letter, he claims, lulled him into inaction by stating the following: "[the Bank] plans to advertise [the plane] for sale in appropriate newspapers and to sell it for the highest price attainable at private sale on or after 12:00 noon, October 20, 1983." Interfirst did not sell the plane until December 20, 1985, for $226,088.69, which left an outstanding balance against Fernandez of $447,921.29. Fernandez claims that Interfirst failed to live up to the "promise of its letter," and should be barred from recovering a deficiency judgment.

Under Texas law, a creditor who does not fulfill the requirements of § 9.504(c) is barred from recovering a deficiency against the debtor. *Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769, 771 (Tex.1982). A creditor's primary obligation to the debtor is to prove that the disposition of repossessed collateral was

---

10. Tex.Bus. & Com.Code Ann. § 9.504(c) (Vernon Supp.1988) provides:

Disposition of collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms that every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale....

11. We do not decide which party, debtor or creditor, carries the burden of proving commercial reasonableness under Texas law. Texas courts have held that the debtor must raise the issue of commercial unreasonableness. *E.g., Pruske v. National Bank of Commerce*, 533 S.W. 2d 931 (Tex.Civ.App.—San Antonio 1976, no writ). Recent Texas decisions hold that a creditor seeking dificiency judgment must prove that disposition of repossessed collateral was conducted in a commercially reasonable manner, *M.P. Crum Co. v. First Southwest Savings & Loan Assoc.*, 704 S.W.2d 925 (Tex.App.—Tyler 1986, no writ); *Sunjet, Inc. v. Ford Motor Credit Co.*, 703 S.W.2d 285, 288 (Tex.App.—Dallas 1985, no writ).

"commercially reasonable." *Id.* at 771. We agree with the district court that Tex. Bus. & Com.Code Ann. § 9.507(b) (Vernon Supp.1988) controls this issue. Section 9.507(b) states that a sale is commercially reasonable, "if [the creditor] sells at a price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold."

We find ample evidence in the record supporting the district court's conclusion that the sale was commercially reasonable under § 9.507(b). During the two-year lag period between repossession and sale, Interfirst attempted to sell the plane through the following methods: special brochures and inserts sent to all owners of Piper Navaho Aircraft, five brokers given an open right to sell the plane, gradual reduction of the price of the airplane, and national advertising in the form of a twenty-inch ad in "Trade–A–Plane" circular. Interfirst also exhibited the plane at an air show. The plane was finally sold for $226,088.69, a price current in the market at the time of the sale.[12]

The sale cannot be considered commercially unreasonable simply because it took place approximately two years after repossession. The record shows that Interfirst continuously tried in good faith to sell the plane during the two-year period. Moreover, under § 9.507(b), "[t]he fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." Tex.Bus. & Com. Code Ann. § 9.507(b).

Finally, regardless of whether Interfirst is bound by its representations in the letter, we consider those representations to have been substantially fulfilled.[13] The sale did in fact occur "after 12:00 noon, October 20, 1983." And, considering the variety of attempts used by Interfirst to sell the plane, the statement that it would be advertised in "appropriate newspapers" was satisfied by the ad in "Trade–A–Plane" circular. We cannot find that the district court was clearly erroneous in holding the sale to have been commercially reasonable.

We affirm the district court's exercise of jurisdiction over Fernandez, its choice of Texas law based on the choice-of-law clause contained in the loan agreement and the letter, and its holding that sale of the airplane was commercially reasonable under Texas law.

AFFIRMED.

---

12. Flightplan International, an aircraft appraisal and marketing firm, had advised Interfirst prior to sale that the plane probably would retail at or below $200,000. Fernandez introduced no evidence contradicting this estimate.

13. Fernandez has offered no Texas authority for the proposition that Interfirst is bound by its representations in the letter of notice. He points to the case of *Connex Press, Inc. v. International Airmotive, Inc.*, 436 F.Supp. 51 (D.D.C. 1977), in which a creditor was barred from recovering a deficiency judgment on an airplane foreclosure sale, because the creditor failed to

live up to its representation to advertise adequately the repossessed plane. Advertising was minimal and the creditor purchased the plane, a jet, for several hundred thousand dollars less than its actual value at the time of sale. The D.C. District court held that the sale did not satisfy commercial reasonableness under Uniform Commercial Code § 9–504, which is essentially the same as Tex.Bus. & Com.Code § 9.504. The persuasiveness of this case in the matter before us is substantially diminished by the fact that Interfirst sold the plane for *more* than its estimated retail value at the time of sale.