**LOUIS DREYFUS CORP., Plaintiff,**

v.

**McSHARES, INC., Defendant and Third Party Plaintiff,**

v.

**INTER–INDUSTRY INSURANCE CO., Third–Party Defendant.**

Civ. A. No. 88–5489.

United States District Court, E.D. Louisiana.

Oct. 16, 1989.

## MEMORANDUM AND ORDER

SEAR, District Judge.

This matter comes before the Court on third-party defendant Inter–Industry Insurance Company's motion to set aside the default entered against it on June 27, 1989 and to dismiss for insufficient service and lack of personal jurisdiction. Because Inter–Industry Insurance Company was not properly served prior to the entry of default, the entry of default must be set aside. Further, the Court concludes that it lacks personal jurisdiction over Inter–Industry Insurance Company.

FACTS

Plaintiff Louis Dreyfus Corp. ("Dreyfus") hired McShares, Inc. ("McShares") to fumigate some of Dreyfus's grain storage tanks located at Dreyfus's plant in Reserve, Louisiana. The work was performed by Research Fumigation Co. ("Fumigation"), a subsidiary of Research Products Co. ("Products"). Products is a division of McShares.

On September 24, 1988, a fire started in one of Dreyfus's tanks, damaging the tank and the grain stored within. Dreyfus filed this action on December 14, 1988 against McShares, Products, Fumigation, and Zu-

rich Insurance Co, alleging that the fumigation work caused a chemical reaction which in turn started the fire in the tank. Dreyfus invoked this Court's diversity jurisdiction under 28 U.S.C. § 1332. On May 12, 1989, McShares, also alleging diversity, filed a third party complaint against Inter-Industry Insurance Company, Ltd. ("Inter-Industry"), a company organized under the law of Isle of Man, British Isles. Inter-Industry had written a general products liability insurance policy for Products. Named as an insured under the policy was "Research Fumigation Company, Division of McShares, Inc."

Prior to the entry of default, McShares attempted on two occasions to serve Inter-Industry in two different ways. On May 12, 1989, McShares had the clerk issue two summons. McShares served one copy upon the Louisiana Secretary of State and one copy upon Inter-Industry at an old address. The process sent directly to the old address was never received. The process sent via the Secretary of State was received on July 3, 1989, six days after the default was entered in this court. When McShares realized that the original service had been sent to the wrong address, McShares had the clerk reissue the summons and complaint on June 27, 1989. Again, McShares served Inter-Industry and the Secretary of State. The summons and complaint sent directly to Inter-Industry was sent via Emery Air Express. Inter-Industry received the summons and complaint on June 29, 1989.

Because Inter-Industry failed to appear, plead, or otherwise defend, McShares moved for an entry of default against Inter-Industry on June 23, 1989; a default was entered against Inter-Industry on June 27, 1989. By its motion filed on August 17, 1989, Inter-Industry seeks to set aside the default and to dismiss the third party claim against it on the grounds of insufficiency of service and lack of personal jurisdiction.

## DISCUSSION

A judgment rendered without personal jurisdiction is void. *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877). Therefore, if Inter-Industry was improperly served, this court never had jurisdiction over Inter-Industry, and the entry of default must be set aside.

Rule 4 of the Federal Rules of Civil Procedure provides several ways to serve a foreign defendant. Although McShares attempted at least two methods of service on at least two separate occasions, McShares never fully complied with *any* of the methods set forth in Rule 4.

■ First, Rule 4(c)(2)(C)(i) provides that a foreign corporation may be served "pursuant to the law of the State in which the district court is held for the service of summons or other like process upon such defendant in an action brought in the courts of general jurisdiction of the State." In cases involving foreign insurers, service under Louisiana law may be accomplished in two ways. Service under the long-arm statute, La.Rev.Stat.Ann. § 13:3201 is effective if "[a] certified copy of the citation and of the petition" is sent to the defendant "by registered or certified mail." La.Rev. Stat.Ann. § 13:3204. The record reflects that McShares never served Inter-Industry by registered or certified mail prior to the entry of default, and therefore McShares' attempts to serve Inter-Industry are ineffective under the long-arm statute.

■ Louisiana also has a provision explicitly providing for service of process upon foreign insurers—La.Rev.Stat Ann. § 22:1253(B).[1] This was one of the avenues McShares attempted to utilize in serving Inter-Industry. For proper service under § 22:1253(B), a number of steps must be followed. First, the plaintiff's attorney must deliver two copies of the summons and complaint to the secretary of state. The secretary will then send the copies by registered mail to the defendant's last known address. Within 10 days after deliv-

1. When suing a foreign insurer under Louisiana's insurance code, service may be effected pursuant to either the long-arm statute or the insurance statute. *See Travelers Indemnity Co.*

*v. Atlantic Express Line,* 837 F.2d 187, 189 (5th Cir.1988); *First Guaranty Bank v. Attorneys Liability Assurance Society, Ltd.,* 515 So.2d 1080, 1083 (La.1987).

ery of the summons and complaint to the secretary of state, the plaintiff's attorney must send, by registered mail, notice of service and a copy of the complaint to the defendant's last known address. Finally, the receipt of plaintiff's notice, plus an affidavit from the plaintiff's attorney stating that he has complied with the provisions of § 22:1253(B), must be filed in the record. Because McShares failed to file the requisite receipts and affidavits of compliance, both attempts to serve Inter–Industry through the Secretary of State under § 22:1253(B) failed.

■ Rule 4 provides also that service may be accomplished by mailing: 1) a copy of the sumons and complaint; 2) 2 copies of the notice and acknowledgement; and 3) a stamped, self-addressed envelope to the defendant directly. Rule 4(c)(2)(C)(ii). This was the second method of service McShares intended to use. According to the rule, if no acknowledgement is received within 20 days after mailing, the plaintiff must effect personal service under Rule 4(c)(2)(A) or (B). In this case, McShares did not receive an acknowledgement within 20 days after the first direct mailing (that is, by June 1), nor did McShares effect personal service after June 1. Therefore, McShares failed to meet the requirements of Rule 4(c)(2)(C)(ii).

■ The final option available to McShares is set forth in Rule 4(i)—Alternative Provisions for Service in a Foreign Country.[2] The only applicable provision here is Rule 4(i)(1)(D): "it is sufficient if service of the summons and complaint is made ... by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of court to the party to be served."

The two mailings requiring return receipts (as required by Rule 4(i)(1)(D)) are the Emery mailing received on June 29, 1989[3] and the Secretary of State's mailing

received on July 3, 1989. As no mailing to Inter–Industry was addressed and dispatched by the clerk of court, service was not accomplished under Rule 4(i).

■ Inter–Industry was not properly served prior to the entry of default; nor was Inter–Industry properly served as of July 3, 1989. Because service has not been accomplished properly upon Inter–Industry, the entry of default is void and must be set aside. *See Leab v. Streit*, 584 F.Supp. 748, 760 (S.D.N.Y.1984). Actual notice does not remedy otherwise defective service, *id., citing Wuchter v. Pizzutti*, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928); nor did Inter–Industry waive its objection when it failed to come forward within twenty days of this technically defective service. "Although there would not appear to be any constitutional infirmity in holding that [the defendant] did waive its objection in this case, since actual notice was received, the better approach seems to be to start the twenty day period for waiver when in personam jurisdiction is obtained by valid service." *Leab*, 584 F.Supp. at 760.

Although Inter–Industry was not properly served as of July 3, 1989, the preceding discussion does not entirely dispose of the question of Inter–Industry's further participation in this case for the simple reason that McShares again attempted to serve process upon Inter–Industry on September 1, 1989. Assuming without deciding that service was properly effected on September 1, 1989 or shortly thereafter, I turn to Inter–Industry's motion to dismiss for lack of personal jurisdiction.

■ In a diversity case, a federal district court may exercise in personam jurisdiction over a foreign defendant only to the extent permitted by state law. *Interfirst Bank Clifton v. Fernandez*, 844 F.2d 279 (5th Cir.), *modified on other grounds*, 853 F.2d 292 (5th Cir.1988). In order to determine

---

**2.** I say "final" because although Rule 4(e) describes the manner of service upon a party not inhabitant of or found within the state, Rule 4(e) simply encompasses the methods discussed herein.

**3.** Emery Air Express does not require a signed receipt from the recipient unless specifically requested by the sender. I have assumed for purposes of this discussion that the mailing in question did require a return receipt, although there is nothing in the record to verify this.

whether jurisdiction exists over Inter–Industry, two questions must be answered. First, does Louisiana law permit the exercise of jurisdiction over a foreign insurer, and second, does Inter–Industry have such minimal contacts with the State of Louisiana such that the exercise of jurisdiction over Inter–Industry comports with traditional notions of fair play and substantial justice? *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

With respect to the first question, the Louisiana long-arm statute provides: "[A] court of this state may exercise personal jurisdiction over a non-resident on any basis consistent with the ... Constitution of the United States." La.Rev.Stat.Ann. § 13:3201(B).[4] Therefore, under the long-arm statute, "the sole inquiry into jurisdiction over a non-resident is a one-step analysis of the constitutional due process requirements." *First Guaranty Bank of Hammond v. Attorneys Liability Assurance Society, Ltd.*, 515 So.2d 1080, 1083 (La.1987).

In evaluating the strength of a defendant's contacts with the forum state, it must appear "that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), *quoting World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). One aspect of this inquiry includes an analysis of whether the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183, *quoting Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). If the contacts are "random, fortuitous, or attenuated," or the result of the "unilateral activity of another party or third person,"

jurisdiction cannot be supported. *Burger King*, 105 S.Ct. at 2183.

Of the cases exploring the due process limits on personal jurisdiction, the case most on point is *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1958). In *McGee*, an Arizona insurer had sold a life insurance policy to a California insured. Subsequently, a Texas insurer took over the Arizona company. Despite the fact that the Texas insurer had no office or agents in California, and never solicited or did any insurance business in California except the one policy, the Supreme Court held that where the policy was delivered to California, premiums were paid from California, and the insured was a California resident, California did not violate due process by exercising jurisdiction over the Texas insurer.

Inter–Industry has no office in Louisiana, does not write policies in Louisiana, and delivers no policies to Louisiana. The Inter–Industry insurance policy at issue in this case was written in Isle of Man and delivered to McShares in Kansas. Fumigation—a subsidiary of a division of McShares—is a Louisiana resident and a named insured. At this point, it is unknown whether McShares or Fumigation (or both) pays the premiums on the policy, but it appears that all correspondence from Inter–Industry (or its agent, Beauman & Beauman, Ltd.) relating to the claim, including correspondence concerning the appointment of a Metaire adjuster to investigate the claim, was sent to Kansas. In addition, the Metaire adjuster was employed by another company ("U.A.C.").

On these facts, Inter–Industry's contacts with Louisiana do not satisfy even the *McGee* standard. The only apparent contact with Louisiana is the insurance policy, and a contract, standing by itself, is insufficient to support jurisdiction. *Cf. Burger King, supra*, 105 S.Ct. at 2185 ("If the question is whether an individual's contract with an out-of-state party *alone* can auto-

---

**4.** As discussed *supra* at 377, Louisiana has a statute that asserts jurisdiction over non-resident insurers "transacting business" in Louisiana (La.Rev.Stat.Ann. § 22:1253). However, the long-arm statute makes this statute "unnecessary." *First Guaranty Bank of Hammond v. Attorneys Liability Assurance Society, Ltd.*, 515 So.2d 1080, 1083 (La.1987).

**380**

matically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.") (emphasis in original). Because of the insurance policy, Inter–Industry had to contact the Metaire adjuster, but Inter–Industry cannot be said to have purposefully availed itself of the privilege of conducting business in Louisiana. Rather, Inter–Industry's contacts with Louisiana result from the unilateral activity of McShares and its subsidiaries. While Inter–Industry might reasonably anticipate being haled into court in Kansas, its contacts with Louisiana are too attenuated to support jurisdiction here.[5]

Accordingly, IT IS ORDERED that the default entered against third-party defendant Inter–Industry is SET ASIDE, and

IT IS FURTHER ORDERED that defendant Inter–Industry is DISMISSED from this action for lack of personal jurisdiction over Inter–Industry.

5. *Compare First Guaranty Bank v. Attorneys Liability Assurance Society, Ltd.,* 515 So.2d 1080 (La.1987), in which the Louisiana Supreme Court held that a Bermuda company which provided legal malpractice insurance to four large Louisiana law firms over a period of five years, collected premium payments wired directly from New Orleans to Bermuda, and sent a representative to New Orleans to meet with various insureds was subject to personal jurisdiction in Louisiana.