**TRANSCONTINENTAL GAS PIPELINE CORPORATION, Plaintiff,**

**v.**

**DAKOTA GASIFICATION CO., Defendant.**

Civ. A. No. H–90–3453.

United States District Court,
S.D. Texas,
Houston Division.

May 31, 1991.

Thomas R. McDade, Fulbright & Jaworski, Houston, Tex., for plaintiff.

Mary Jane Reynolds, Morrison & Reynolds, Washington, D.C., for defendant.

## MEMORANDUM AND OPINION

RAINEY, District Judge.

The Plaintiff, Transcontinental Gas Pipeline Corporation ("Transco"), filed a Petition to Compel Arbitration before this Court on November 10, 1990. The Defendant, Dakota Gasification Company ("Dakota"), filed a Motion to Dismiss and a Motion in Opposition to Transco's Petition to Compel Arbitration on November 28, 1990. On December 5, 1990, this Court heard oral argument on all the motions then pending before the Court. For the reasons stated in the body of this opinion, this Court finds that Transco's Motion to Compel Arbitration should be granted.

## FACTUAL BACKGROUND

Following the energy crisis of the early 1970's the United States Congress enacted special legislation designed to provide funding for research and development of commercially viable alternative fuel sources. Under that legislation, special loans and loan guarantees were made available for projects that would have otherwise not been commercially feasible. In the early 1980's four natural gas pipeline companies, Michigan Wisconsin Pipeline Company, Natural Gas Pipeline Company of America, Tennessee Gas Pipeline Company, and Transcontinental Gas Pipeline Corporation (Hereinafter collectively "the Pipeline Companies"), in concert with a fifth investor formed a partnership to build and operate a coal gasification plant in North Dakota. This plant was designed to use lignite coal to produce "synthetic natural gas." The partnership was named Great Plains Gasification Associates ("Great Plains").

In order to fund the construction of this experimental plant, each of the Pipeline Companies entered into an individual Gas Purchase Agreement with Great Plains. In addition, each of the Pipeline Companies signed the Pipeline Affiliate's Agreement. The Pipeline Affiliate's Agreement was a guarantee contract between the Pipeline Companies and the Department of Energy. Transco signed both the Gas Purchase Agreement and the Pipeline Affiliate's Agreement on January 29, 1982. On the basis of the Gas Purchase Agreement and the Pipeline Affiliate's Agreement, Great Plains was able to secure mortgage financing, guaranteed by the Department of Energy, for the construction of the plant.

Eighteen months later on June 30, 1983, Transco entered into a Synthetic Gas Transportation Agreement with Great Plains. The Synthetic Gas Transportation Agreement provided for construction of a pipeline from the actual delivery point at

the gasification plant to the interstate pipeline system.

Faced with the economic realities of the mid 1980's, Great Plains defaulted on the mortgage financing that had been guaranteed by the Department of Energy. On August 1, 1985, the Department of Energy foreclosed under the Pipeline Affiliate's Agreement and appointed a Trustee to operate the plant. The default by Great Plains terminated the Gas Purchase Agreements. However, the Gas Purchase Agreements were reinstated by the Department of Energy under the specific contract provisions of the Pipeline Affiliate's Agreement. On October 7, 1988, Dakota purchased the plant and all of the assets held by the Department of Energy under an Asset Purchase Agreement. Disputes have now arisen under the Synthetic Gas Transportation Agreement and the Gas Purchase Agreement between Transco and Dakota.

On October 12, 1990, Dakota filed suit in the Federal District Court for the District of North Dakota. Dakota requested declaratory judgment, injunctive relief, and damages for breach of contract against all four Pipeline Companies. On November 8, 1990, Transco filed a demand for arbitration against Dakota in this Court.

## DISCUSSION

The motions before this Court raise four questions which must be addressed at this time. The first question is whether this Court should exercise personal jurisdiction over Dakota. The second is whether this action should either be dismissed or transferred to the North Dakota Federal Court. The third question is whether or not this Court should compel arbitration. The fourth question is whether or not this Court should enjoin other parallel arbitration proceedings.

## QUESTION NO. 1

■ Dakota asserts that this Court lacks the necessary prerequisites for exercising personal jurisdiction over the Defendant. Since personal jurisdiction is a threshold issue, the Court will address this matter first.

This Court's personal jurisdiction depends on the reach of the Texas Long Arm Statute. Tex.Civ.Prac. & Rem.Code Ann. §§ 17.041–17.045 (Vernon 1986). It is well settled law in this circuit that the Texas Long Arm Statute extends to the limits of federal due process analysis. *Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir.1990); *W.N.S., Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir.1989); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 372 (5th Cir.1987).

■ Due process requires that a district court seeking to exercise personal jurisdiction over a non-resident defendant make two separate inquiries. The first inquiry is whether the non-resident defendant has purposefully established "minimum contacts" with the forum state. The second inquiry requires the district court to examine whether the "traditional notions of fair play and substantial justice" would be offended by the maintenance of a suit against the non-resident defendant in the forum state.

■ In this Circuit, the contacts of the non-resident with the forum state may support jurisdiction if either specific or general jurisdiction is justified. *InterFirst Bank Clifton v. Fernandez*, 844 F.2d 279, 283 (5th Cir.1988). Since the dispute between Dakota and Transco arises out of or is related to the alleged contacts by Dakota with the State of Texas, the appropriate analysis is one of specific jurisdiction. Because Transco seeks to invoke the jurisdiction of this Court, Transco bears the burden of presenting a prima facie case for personal jurisdiction. *D.J. Investments v. Metzeler Motorcycle Tire Agent Greg*, 754 F.2d 542, 545–546 (5th Cir.1985).

Although the exact nature of the dispute between Transco and Dakota is not clearly in the record before this Court, it appears that Dakota is seeking to collect approximately $90,000,000 from the four Pipeline Companies involved in the transportation of gas from Dakota's plant. Dakota admits that during the process of negotiations over the disputed payments, prior to instituting litigation, its agents came to Texas on at least one occasion in an attempt to

negotiate a settlement with Transco and possibly other pipelines as well. (See the affidavit of Mark D. Voss dated November 28, 1990 and attached to Dakota's Motion to Dismiss).

In addition, Dakota admits that they routinely send auditors to Texas to audit Transco's records of pipeline transmissions and sales. Finally, Dakota has charged Transco with breaching its contractual obligations here in Texas by refusing to provide all of the documents Dakota believes are required by the contracts. Clearly, Dakota has purposefully established "minimum contacts" with the State of Texas for the specific purpose of the now contested business relationship.

The second prong of the due process analysis addresses the fairness and reasonableness of requiring Dakota to defend this law suit in the State of Texas. In *Asahi Metal Industry Co., Limited v. Superior Port of California,* 480 U.S. 102, 114–115, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987), the United States Supreme Court held that often the interest of the plaintiff and the forum state would be strong enough to justify even the serious burdens which may be placed on an out-of-state defendant by the exercise of personal jurisdiction. This Court finds that Dakota has derived substantial economic benefit from this particular contact with the State of Texas. The Court further finds that Dakota now seeks to extract additional economic benefit from the State of Texas by collecting additional sums from Transco. Obviously, the State of Texas has a significant interest in providing a forum for this type of litigation.

Finally, there are two additional reasons why the exercise of personal jurisdiction in this particular matter is appropriate. First, the very contracts that are in dispute provide that the Chief Judge of the Fifth Circuit may be required to make the selection of the final arbiter in this matter. Second, this dispute at least in part, arises from Transco's refusal to provide documents physically located here in Texas, to which Dakota believes it is entitled by the contracts.

The fact that Dakota's contacts with the State of Texas have occurred as a part of the on-going relationship created by these contracts which are now in dispute clearly makes the exercise of specific jurisdiction appropriate. Therefore, based on admissions by Dakota and the uncontroverted evidence provided by Transco, this Court finds that the exercise of personal jurisdiction over Dakota for the specific purpose of this motion to compel arbitration is proper.

### QUESTION NO. 2

Dakota next argues that this Court should either dismiss the Motion to Compel arbitration or transfer the motion to the North Dakota United States District Court under the "first filed" rule in federal litigation. Although this Court found Dakota's argument unconvincing, the matter is now moot. The case which had been previously filed in the United States District Court for the District of North Dakota was dismissed on January 11, 1991.

### QUESTION NO. 3

The third question presented by Dakota's defense is whether or not this Court should compel arbitration. Dakota makes a series of three significant challenges to the appropriateness of an Order to Compel Arbitration. The first challenge presented by Dakota is that the Illinois Uniform Arbitration Act, Ill.Rev.Stat.1989, Ch. 10, Par. 101 *et seq.,* should apply to the Motion to Compel Arbitration rather than the Federal Arbitration statute in Title IX U.S.C. § 1 *et seq.* Second, Dakota challenges the existence of an agreement to arbitrate between the parties. Third, Dakota challenges Transco's right to arbitration even if an Arbitration Agreement exists on the basis that Transco has waived its right to arbitrate by prior litigation. For the sake of simplicity the Court will address each of the three challenges as a separate section of this question.

### SECTION ONE

Dakota argues that this Court should not compel arbitration because the Illinois Uniform Arbitration Act, Ill.Rev.Stat.1989, Ch.

10, Par. 101 *et seq.*, should control motions to compel arbitration based on the parties' election of Illinois law in the Applicable Law clause which is Article XV of the Synthetic Gas Transportation Agreement, and Article XVII of the Gas Purchase Agreement.

Dakota makes three independent arguments that the Illinois Uniform Arbitration Act, Illinois Revised Statute 1989, Chapter 10, Paragraph 101 *et seq.*, should preclude this Court from granting Transco's Motion to Compel Arbitration. Dakota first argues that Paragraph 102(c) of the Illinois Uniform Arbitration Act only grants jurisdiction to compel arbitration to a Court where a proceeding is already pending that involves the matter in dispute. Dakota concludes that since the only action pending over this matter was the North Dakota suit, that only the North Dakota Federal Court would have the authority to compel arbitration under the Illinois Statute. The dismissal of the action in North Dakota by the federal court there makes this argument moot.

■ Second, and the strongest thrust of Dakota's argument, is that the Southern District of Texas is not "an appropriate forum" for the resolution of this dispute over the arbitration issue. (See Defendant Dakota Gasification Company's memorandum in support of its Motion to Dismiss and in Opposition to Transcontinental Gas Pipeline Corporation's Petition to Compel Arbitration, Section C. Pages 18, 19 and 20.)

■ Though not spelled out precisely this "appropriate forum" argument has all the trappings of being an attack on this Court's subject matter jurisdiction. The Dakota brief states at Page 20 "no provision of the Illinois Uniform Arbitration Act designates the United States District Court for the Southern District of Texas as an appropriate forum." The problem with this argument is that subject matter jurisdiction for the federal court can neither be granted nor destroyed by state law. Only the United States Congress can confer subject matter jurisdiction on federal courts.

Subject matter jurisdiction over this dispute was granted to this court by 9 U.S.C. § 4 which says in relevant part;

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition *any* United States District Court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."

9 U.S.C. § 4 (1970) (Emphasis Added).

Diversity jurisdiction under Title 28 has been properly plead and subject matter jurisdiction is therefore appropriate.

Dakota's third argument is that the United States Supreme Court's decision in *Volt Information Sciences, Inc. v. The Board of Trustees of the Leland Stanford Junior University*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) is controlling over this Court's decision whether or not to compel arbitration.

In *Volt*, Stanford University argued that the parties had chosen to arbitrate under the California Arbitration Act which provided for a stay of arbitration during related litigation even though the Federal Arbitration Act would not grant such a stay. The State Court in *Volt* had ruled that the choice of law provision in the parties' agreement intended the California Rules of Arbitration to apply. The Supreme Court in affirming the State Court's grant of the stay said:

"But we do not think the Court of appeals offended the Moses Cone principle by interpreting the choice of law provision to mean that the parties' intended the California Rules of Arbitration, including the § 1281.2(c) stay provision, to apply to their Arbitration Agreement. There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to insure the enforceability, according to their terms, of private agreements to arbitrate."

The case at bar is inapposite to the *Volt* decision. First, even if the choice of law clause should be construed to mean that the Illinois Uniform Arbitration Act applies, Dakota has failed to point this Court to any provision of the Illinois Act that would preclude the granting of the Motion to Compel Arbitration. Second, it is not clear from the Agreement that the parties intended for the Illinois Uniform Arbitration Act to apply to their agreement; and here, unlike *Volt*, no Court has ruled that the parties agreement intended for the Illinois Arbitration Rules to be applied. The parties expressly provided that the arbitration would proceed pursuant to the rules of the American Arbitration Association in effect at the time of the arbitration. (See Synthetic Gas Transportation Agreement, Article XVI Arbitration, pages 15 and 16, and Gas Purchase Agreement, Article XVIII Arbitration, page 35.)

■ Dakota's argument misconceives the *Volt* holding. In *Volt* the Supreme Court allowed that the parties could choose the rules under which they would arbitrate and the substantive law of the state that would apply. In *Volt* a substantive right was granted by the state law that would not have been granted by the Federal Arbitration Act. Dakota has not claimed that the Illinois Act would not compel arbitration nor that the Illinois Act would grant Dakota some other substantive right that the Federal Arbitration Act would deny. But instead, they have argued that the Illinois procedural rules as to jurisdiction and appropriate forum should apply to the federal court. This simply is not the law. The federal court may apply the substantive law of a state; however, the federal court's procedural rules, especially in matters of jurisdiction and forum selection, are always controlled by federal law.

## SECTION TWO

■ The thrust of Dakota's real argument in opposing the Motion to Compel Arbitration is that when the Department of Energy reinstated the Gas Purchase Agreement and the Synthetic Gas Transportation Agreement, under the authority granted to the Secretary of Energy by the Pipeline Affiliate's Agreement, the arbitration clauses in the two original contracts were either modified or ceased to exist. This Court finds Dakota's argument to be without merit for the following reasons.

First, this Court agrees with the United States District Court for North Dakota's assessment of the parties' rights in the order dated January 14, 1986, signed by Judge Conmy. Judge Conmy stated "the United States has succeeded to the contract rights of the 'partnership', [Great Plains] and has also assumed the duties of the partnership under the contract. No greater or lesser duty is imposed upon the United States than created by the contract on the partnership."

Dakota argues that because the Department of Energy could not have been forced to submit to binding arbitration under the contracts Dakota cannot be forced to either. However, the fact that the United States government or the Department of Energy would have had an absolute statutory or constitutional defense to binding arbitration in no way alters the actual duties imposed by the contracts. Nothing in any of the contracts, including the Pipeline Affiliate's Agreement, claims to void any of the duties imposed on the seller, it simply substitutes the Secretary of the Department of Energy or the Secretary's Trustee for Great Plains as the seller under the contracts in question. Any constitutional or statutory defenses to binding arbitration that may have been available to the Department of Energy or the United States government are not transferrable or assignable to Dakota.

This Court finds that the United States by and through the Department of Energy assumed all of the duties and rights which Great Plains would have enjoyed under the Gas Purchase Agreement and the Synthetic Gas Transportation Agreement. Dakota as the successor in interest to the United States also assumed all of the rights and the duties that were imposed upon Great Plains under the contracts. Therefore, Dakota has a binding contractual obligation to proceed to arbitration on any matter that

falls within the scope of the arbitration clauses.

## SECTION THREE

■ It its final argument, Dakota urges this Court to find that Transco waived its right to arbitration by participating in previous litigation between the Department of Energy and the Pipeline Companies. There is no justification for the finding of such a waiver. Under the Pipeline Affiliate's Agreement, Transco was obligated to litigate any dispute between the Department of Energy and the Pipeline Companies. Transco's compliance with its contractual obligations under the Pipeline Affiliate's Agreement cannot be construed as a waiver of its rights under the Gas Purchase Agreement or the Synthetic Gas Transportation Agreement. Furthermore, the litigation of claims which could not have been arbitrated cannot be construed as a waiver of the right to arbitrate other, wholly independent claims, which can and should be arbitrated.

As a part a of this argument, Dakota attempts to urge that because the Gas Purchase Agreement and the Pipeline Affiliate's Agreement were executed on the same day, they compromise one contract and should be read together. Dakota argues that the Pipeline Affiliate's Contract language alters the Gas Transportation Agreement's terms. Such a reading of the contracts is unjustified and unnecessary for the following reasons.

First, these were not simply two contracts between identical parties on the same subject. The Gas Transportation Agreement was entered into between the Pipeline Companies and Great Plains. The second contract, the Pipeline Affiliate's Agreement, was a guarantee agreement between the Pipeline Companies and the United States government by and through the Department of Energy. That separate contract was set up to secure the mortgage financing made to Great Plains. These were separate contracts between separate parties and had separate purposes.

Second, and more importantly, the two contracts are not in conflict. The Pipeline Affiliate's Agreement only requires litigation when a dispute arises between the Pipeline Companies and the United States government as the guarantor of the mortgage. However, the Pipeline Company's Agreement with Great Plains, as evidenced by both the Gas Purchase Agreement and the Synthetic Gas Transportation Agreement, clearly intended that all private commercial disputes between non-governmental entities were to be resolved by binding arbitration rather than at the expense and delay of formal litigation.

## QUESTION NO. 4

■ Finally, Transco has asked this Court to restrain the filing by Dakota of requests for arbitration in other jurisdictions while the arbitration in the Southern District of Texas is in progress. This Court declines to enjoin the other possible proceedings for the two reasons explained below.

First, the Court finds that there is no real danger of irreparable harm to either party and therefore, injunctive relief is not warranted. Second, this Court's jurisdiction to enforce the final arbitration award will not be defeated by requests for arbitration being filed in other locations.

## CONCLUSION

Based on the discussion and explanations in the foregoing opinion, this Court finds that:

1. Dakota is subject to personal jurisdiction in the Southern District of Texas for the purpose of this action.

2. The Motion to Compel Arbitration was properly brought in the Southern District of Texas.

3. Both the Illinois Uniform Arbitration Act and the Federal Arbitration Act would compel arbitration in this matter.

4. The contracts between Great Plains and the Pipeline Companies were not modified by the Department of Energy's temporary status as seller under the Contracts.

5. Transco has not waived its right to compel arbitration by fulfilling its obli-

gations to litigate under the Pipeline Affiliate's Agreement.

6. The contracts between Dakota and Transco require binding arbitration.

7. The matter currently in dispute falls within the scope of the arbitration clauses in question.